# Adam Ziegler, Plff. in Err., *v.* Commonwealth of Pennsylvania.

An indictment regularly found cannot be impeached by the testimony of the grand jurors who found it.

Under an indictment against the holder of a liquor license for a misdemeanor (under the act of 1854, 2 Purdon's Digest, § 45, p. 1082), in wilfully furnishing liquor to persons of known intemperate habits, proof that the defendant knew that his clerk was selling liquor to improper persons or that the defendant in any manner assented to or promoted the illegal sales at his bar charged in the indictment will support a conviction equally as well as proof that the illegal sales were made directly by the defendant himself.

---

NOTE.—Grand jurors cannot impeach their own findings (Com. v. Twitchell, 1 Brewst. (Pa.) 551); but they may testify as to the nature of the issue involved (Com. v. Green, 126 Pa. 531, 12 Am. St. Rep. 894, 17 Atl. 878; Com. v. McComb, 157 Pa. 611, 27 Atl. 794; Com. v. Kulp, 17 Pa. Co. Ct. 561, 5 Pa. Dist. R. 468); or may prove who was the real prosecutor (Huidekoper v. Cotton, 3 Watts, 56); or testify to contradict a witness before the petit jury, who has sworn differently before the grand jury (Gordon v. Com. 92 Pa. 216, 37 Am. Rep. 672).

Since there are no accessories in misdemeanors, but all implicated are principals, the question of agency has nothing to do with such a case.

(Argued April 17, 1888.  Decided May 14, 1888.)

January Term, 1887, No. 340, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.  Certiorari sur writ of error to the Court of Quarter Sessions of Huntingdon County to review a conviction for selling liquor to men of known intemperate habits, December Term, 1886, No. 19, Affirmed.

The indictment was under the act of 1854, 8 Purdon's Digest, p. 1082, § 45.

Before the jury was sworn or plea entered, defendant moved to quash the indictment, "because the grand jury in their action upon the bill set before them, ignored it, and decided not to return a true bill; and that after such action by the grand jury, the district attorney appeared before them and vehemently addressed them, urging them to find a true bill; and if they would not do so upon the evidence then before them, he asked them to give him time to furnish further evidence, which the grand jury did; and further evidence was furnished by the district attorney sending after persons who were not at the court house at the time when the grand jury ignored the bill; after which the district attorney again addressed the grand jury, and urged them to reverse their former action and return a true bill, which at the instance of the district attorney they did—these facts to be proved by members of the grand jury, whom the defendant proposes to call and examine in open court."

The district attorney thereupon "denied the effect in law of the facts as stated; that it is not sufficient to quash the indictment; and that there is no allegation contained in the motion as made to the indictment that any undue influence was exercised; that the indorsement on the indictment of the grand jury is conclusive evidence of their finding, the bill having been returned by them regularly, with proper indorsement thereon; that there is no interlineation or erasure on the bill, or any memoranda or record of any other finding than that returned by them as indorsed on the bill."

The court, FURST, J., denied the motion.  1

The defendant having pleaded not guilty, the trial proceeded.

The court charged the jury substantially as follows:

Adam Zeigler, this defendant, stands indicted for a violation of the laws of this commonwealth regulating the sale of liquor.

The allegation in the indictment is that within the last two years he has sold, or caused to be sold, liquor to men of known intemperate habits, to be used as a beverage. Whether he is guilty of this offense or not, under the evidence, is the issue you are sworn to try and determine by your verdict.

It is not denied that Mr. Zeigler has a license to keep a hotel in the borough of Huntingdon. The laws of this commonwealth authorize the courts, in fact require the courts, to grant licenses under certain restrictions for the sale of liquor, for the accommodation of the people and the traveling community; but while this authority is given, there are certain limitations, certain restrictions, regulating the sale of intoxicating drinks. By that license he is not permitted to sell to minors, nor on the Sabbath Day, nor on the day on which elections are held, nor is he permitted to sell to men of known intemperate habits, or to men when drunk, or persons who are insane; to that class of persons the license gives him no authority to sell.

This defendant is indicted for a violation of the law in the sale either by himself or his authorized agent, of liquor as a beverage to men of known intemperate habits, in the borough of Huntingdon, in this county. The section of the act under which he is indicted is as follows: "The wilful furnishing of intoxicating drinks, by sale, gift, or otherwise, to any person of known intemperate habits, as a beverage; a person so offending shall be deemed guilty of a misdemeanor."

[The commonwealth alleges in this case that this defendant, not only himself sold liquor to men of this class as a beverage, within the last two years, but that he caused it to be sold through his agents—Mr. Decker and Mr. Black—and that he permitted them to sell to this prohibited class. The allegation on the part of the commonwealth is that such unlawful sales have been made, within the last two years, to persons by the name of Henry Merrits, George Numer, S. H. Decker, Charles Woods, and George H. Fleming, persons whom the commonwealth alleges are men of known intemperate habits, and that the sales were made by the defendant himself, as well as by his agents. This is the allegation on the part of the commonwealth.] 2

The word "intemperate" means any immoderate or excessive

use of intoxicating liquors. A man of known intemperate habits is one whose habit for intemperance is known in the community. Just as a man is known in the community either as a good citizen or a bad citizen, so are his habits known to be either that of a temperate man or intemperate man; and it must be his character in that respect in the community in which he lives. This is the meaning and spirit of the act of assembly.

[A wilful act is an act that is not done by surprise or by accident;] it means an act that is governed by one's will, a voluntary act; in that sense, the word "wilful" is used in this act of assembly. 3

You have heard the testimony on the part of the commonwealth and on the part of the defendant, with regard to the alleged sales to these different persons; and it is not the purpose of the court to review it in detail. You will recall and remember it. We will but call your attention generally to the subject-matter of the testimony, and will endeavor to instruct you as to the law applicable to the facts in this case. Charles Woods and George H. Fleming both have testified as witnesses in this case. They both testified that they purchased liquor from Mr. Zeigler himself, and from his bar tenders. We will not repeat the testimony to you, but you will remember it distinctly. They have also testified as to their desire for drink and their habits. There has also been other testimony on the part of the commonwealth, both in addition to the known intemperate habits of these two men, as well as others charged to be men of intemperate habits, mentioned in this indictment. All this testimony is for your consideration upon the question of the guilt or innocence of this defendant.

On the other hand, the defendant denies: First, that he sold any liquor himself, to these men; and secondly, he denies that they are men of known intemperate habits in the community. You will remember the testimony of himself and his witnesses in support of his defense. [His bar tenders have been called and they admit the sale to certain ones of the persons named, and in some cases they did not recollect; but they both allege that the men to whom they sold were not men of known intemperate habits.]

[The first question of fact for you to determine is whether this defendant either in person, or by agent, or in both capacities, sold liquor wilfully to men of known intemperate habits, within

the last two years. If the defendant himself sold liquor to these persons, to be used as a beverage, and he made that sale voluntarily, and there is no evidence here to show that any sale by the defendant was not voluntary and wilful on his part; if you find that he so sold, to persons of known intemperate habits, he is guilty of the offense charged in this indictment, because it was his duty to inquire into and know the character of the men frequenting his bar room. He cannot excuse himself on account of his ignorance as to their habits, where he has made no proper effort to ascertain their habits. It is his duty to inquire as to the habits of men who frequent his bar; and if they are men in the community, known to be intemperate in their habits, he must make diligent effort on his part to ascertain it. A mere ignorance on his part is not sufficient in law to excuse him. This is as to sales made by himself.] 4

[Now as to the sales by his bar tender. The bar tender is simply the agent of the defendant or the representative of his principal. An agent is one who acts for another within the scope of his authority. It is not denied by the defendant that both Decker and Black were his agents or bar tenders, and that they were selling liquor for him, at this hotel in the borough of Huntingdon. Now, a sale made by an agent must also be a wilful sale, and it must be made to men of known intemperate habits; and the liquor must have been sold to be used as a beverage—that is for the purpose of drink.] 5

The sale, as we have already said, must be a wilful act, that is, a voluntary act, an act governed by the will; and, further, such sale must be made to a man of known intemperate habits, as a beverage, and within the time prescribed in the statute, *viz.*, two years.

[It is the duty of the defendant to inquire as to the habits of the men who frequent his bar, if their habits are unknown to him. If by proper inquiry he or his authorized agents could have known the intemperate habits of these persons, and they failed to make such inquiry, he is responsible for a wilful sale to men of known intemperate habits. A landlord cannot safely transfer the business of selling liquor to his bar tender, and then give it no attention himself. This is especially so where a landlord is present in the hotel, taking charge of its management. It is his duty to see that the law is observed and obeyed by those to whom he delegates his power and authority. If his agent

violates the law, it is the duty of the landlord to discharge him and employ one who will properly obey and observe his duty. If a sale be made by an agent against the authority of his landlord, and without his knowledge and assent, he would not of course be criminally responsible. At the same time the landlord cannot abandon the business to his bar tender, fail to look after it, and then claim exemption from a wilful violation of the law by his agent. Under such circumstances, the landlord would be responsible, because he has failed to exercise that care and authority over the business which the law requires of him. He received the benefit of the act, and he must therefore be held to a proper discharge of his duty.]   6

Now, this, in the opinion of the court, embraces the law applicable in this case, and applying the law to the facts [you must ascertain whether the defendant himself, or by his authorized agents, sold, or permitted a sale of liquor to be used as a beverage, to men of known intemperate habits, and whether he made proper inquiry in order to ascertain the habits of the men who were frequenting his bar; because if any other rule were to be established, a man might transfer all the patronage of his bar to his bar tender and say to him in the beginning, Do not sell to anybody to whom I am not authorized to sell, and then let his agent transact the business as he pleases, and not be responsible. That would be a preversion of the duty devolving upon the person who holds a license to sell liquor. The landlord can only exempt himself from responsibility by a proper an dcareful discharge of his duty.]   7

[If the defendant in this case did discharge his duties properly, under the instructions we have given you; if you find he did not sell to men who were known in the community to be men of known intemperate habits; or if he did not cause liquor to be sold to such persons to be used as a beverage, or permitted it to be sold,—then your verdict should be, not guilty. If, on the other hand, you find that he did sell to that class of persons wilfully, or permitted his agents to sell to them, or that he caused the sale to be made to them without proper inquiry upon his part as to the habits of the men who were daily visiting his bar, you should find him guilty in manner and form as he stands indicted.]   8

The jury rendered a verdict of guilty, and a motion for a new

trial having been made and refused, the defendant was sentenced to pay a fine of $25, and to be imprisoned in the county jail for ten days.

Thereupon defendant took this writ, assigning for error: (1) The denial of the motion to quash the indictment; and (2–8) the respective portions of the charge inclosed in brackets.

*H. H. Waite* and *R. M. Speer,* for plaintiff in error.—The motion to quash was proper. If defendant or his counsel know of an objection to any of the grand jurors who found the indictment, or to the organization or proceedings of the jury, and proceeded to trial without making the objection, it is waived, and cannot be insisted on. 1 Wharton, Crim. Law, 6th ed. § 473; State v. Rand, 33 N. H. 216; 1 Bishop, Crim. Proc. § 886; Jillard v. Com. 26 Pa. 169.

It was decided by the United States court that a grand jury having received the testimony of a person not under oath, the indictment was quashed as irregularly found. United States v. Coolidge, 2 Gall. 364, Fed. Cas. No. 14,858.

Whatever the ancient doctrine may have been, it is now settled in this state that a grand juror can be called to prove that the testimony of a witness in court is different from what it was before the grand jury. Gordon v. Com. 92 Pa. 216, 37 Am. Rep. 672; State v. Broughton, 29 N. C. (7 Ired. L.) 96, 45 Am. Dec. 507; Com. v. Mead, 12 Gray, 169, 71 Am. Dec. 741; State v. Fasset, 16 Conn. 466.

The object of secrecy in the deliberations of the grand jury was to protect the witness—"consequently, when the purposes of the secrecy are accomplished, it is the better opinion, contrary perhaps to some cases, but maintained in most, that any revelations of the grand jury's doings may be made which justice demands." 1 Bishop, Crim. Proc. 3d ed. § 857; Huidekoper v. Cotton, 3 Watts, 56; Com. *ex rel.* Jack v. Crans, 2 Clark (Pa.) 172.

"The least attempt (of a district attorney) to influence the grand jury, in their decision upon the effect of the evidence, is an unjustifiable interference; and no fair and honorable officer will ever be guilty of it." 1 Wharton, Crim. Law, 6th ed. § 495; Com. v. Salter, 2 Pearson (Pa.) 461.

The presumption arising from the employment of a bar keeper is that he has authority only to make lawful sales. When it is

sought to hold the landlord criminally for the act of his agent, the burden is on the commonwealth to prove express authority. State v. Mahoney, 23 Minn. 181, 2 Am. Crim. Rep. 408.

A single unlawful sale by such clerk would not raise any presumption of authority to violate the law. Parker v. State, 4 Ohio St. 563.

An employer is not criminally responsible for an illegal sale of liquor by his servant, made without his knowledge or consent and in violation of positive instructions given by him in good faith. Lathrope v. State, 51 Ind. 192, 1 Am. Crim. Rep. 468.

*Charles G. Brown,* Dist. Atty., and *George B. Orlady,* for the commonwealth, defendant in error.—The district attorney had the right to be before the grand jury, and to see that all witnesses indorsed on the indictment were called and examined. Wharton, Crim. Pl. 366.

A motion to quash is not granted of course, but must be regularly made; and when grounded on facts not apparent on the record it must be supported by affidavit; and, being addressed to the discretion of the court, such discretion, rather than any absolute rule of law, determines the causes which will prompt its action. 1 Bishop, Crim. Law, 3d ed. 769, 772.

It has been frequently ruled that as quashing is a discretionary act, error does not lie on its refusal. Wharton, Crim. Pl. 8th ed. 387.

The court will not quash an indictment, except in a very clear case. Respublica v. Cleaver, 4 Yeates, 69; Respublica v. Buffington, 1 Dall. 61, 1 L. ed. 37.

An indictment will not be quashed on the ground of irregularities in the arrest, nor for technical irregularities in the conduct of the grand jury. Wharton, Crim. Pl. 8th ed. 388.

The re-examination and revision of the evidence submitted to the grand jury, attempted to be established by *ex parte* statements and upon the allegation of information and belief by interested parties, should not be permitted. See United States v. Reed, 2 Blatchf. 435, 466, Fed. Cas. No. 16,134.

Neither the clerk of the grand jury nor the county attorney can testify or give any information relative to the proceedings which the grand jurors themselves could not give. McLellan v. Richardson, 13 Me. 82; State v. Fasset, 16 Conn. 470.

Grand jurors will not be permitted to testify whether they

voted at all, how they or their companions voted. An innocent person will not be hurt by refusing to go behind the indictment and see how it was found, for he can always vindicate himself in a trial upon the merits. State v. Baker, 20 Mo. 338; State v. Wammack, 70 Mo. 410; Creek v. State, 24 Ind. 151; State v. Gibbs, 39 Iowa, 318; State v. Hamlin, 47 Conn. 95, 36 Am. Rep. 54; Thompson & M. Juries, 742; Hirsh, Juries, 218, 758, note.

A most important injunction, in the oath of a grand juror, is that which imposes upon him the obligation of secrecy. The violation of this was a high misprision and a finable offense. This obligation is perpetual. Nothing in the administration of public justice can be more rational or salutary. 4 Bl. Com. 126; Davis, Precedents of Indictments, 12; Hirsh, Juries, 206.

As to every statement made in the oral motion, each and every grand juror was incompetent on objection. Thompson & M. Juries, 739.

Grand jurors cannot be examined as witnesses to impeach their finding, but may be examined in support thereof. Turner v. State, 57 Ga. 107; Simms v. State, 60 Ga. 145; Hirsh, Juries, 758.

The motion should contain concise averments of all necessary facts to make out a prima facie title to the relief sought, and should be supported by an affidavit. Mitchell, Motions & Rules, 19.

For the refusal of a similar motion to quash although made upon affidavit, see Com. v. Twitchell, 1 Brewst. (Pa.) 554.

A principal is prima facie liable for the act of an agent done in the general course of business authorized by the principal. See 1 Wharton, Crim. Law, p. 247.

Wherever also due supervision could have prevented the mischief, then the master neglecting such supervision is indictable. 1 Wharton, Crim. Law, p. 135. See also Com. v. Gillespie, 7 Serg. & R. 469, 10 Am. Dec. 475; Com. v. Willard, 9 W. N. C. 524; Com. v. Barry, 115 Mass. 146.

PER CURIAM:

To sustain the defendant's first assignment of error would be to introduce a very bad practice, and one heretofore unknown to the criminal jurisprudence of Pennsylvania. That an indictment, regularly found and returned to the court, should be im-

peached by the testimony of the grand jurors who found the bill is a proposition that cannot be sustained.

The remaining assignments have nothing in them which requires special consideration. As there are no accessories in misdemeanors, and as all implicated therein are principals, the question of agency has nothing to do with the case. If the defendant knew that his clerks were selling liquor to improper persons, or if, in any manner, he assented to or promoted the illegal sales charged in the indictment, he was as guilty as though they were bill is a proposition that cannot be sustained.

The judgment is affirmed, and it is ordered that the record be remitted to the Court of Quarter Sessions for execution. .