## Commonwealth *v.* Viscount, Appellant.

Argued April 18, 1935. 

 Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ. 

*Charles Prichard,* with him *J. J. Kintner,* for ap-
pellant.

*Edward Knuff,* Assistant District Attorney, for ap-
pellee.

OPINION BY STADTFELD, J., July 18, 1935:

The defendant was indicted on December 7, 1933 on
three counts, the first setting forth that she "unlaw-
fully, did fraudulently and wickedly pretend, for lucre
and gain, that she, the said Jennie Viscount, would en-

able one Helen Senko to gain or win the affection of one George Kukola for marriage, contrary to the form of the Act of General Assembly, in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania." The second count in the indictment, on motion of the District Attorney, was nolle prossed, and the third count in the indictment reads as follows: "And the Inquest aforesaid, upon their oaths and solemn affirmations aforesaid, Do further present, That the said Jennie Viscount, on the day and year aforesaid, in the County aforesaid and within the jurisdiction of this court, with force and arms, unlawfully, did fraudulently and wickedly pretend to one Mrs. Alice Hauber that a spell was cast upon her which would cause her death, whereupon the said Mrs. Alice Hauber, on the said date, paid the said Jennie Viscount the sum of One Hundred Dollars ($100) to remove said spell, contrary to the form of the Act of General Assembly, in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

The trial of the case at June Sessions, 1934, resulted in a verdict of guilty on the first and third counts in the indictment.

Motions for new trial and in arrest of judgment were overruled by the court in banc in an opinion by REED, S. P., and defendant was sentenced on the first count to pay the costs of prosecution, a fine of $100 and undergo an imprisonment in the county jail for a period of two years, and on the third count, to pay the costs of prosecution, a fine of $10 and undergo imprisonment in the county jail for a period of two years to begin at the expiration of the sentence on the first count. From the judgment entered and sentence pronounced, this appeal was taken.

There are nine assignments of error but, as stated by appellant, the same may be classified under three gen-

eral heads; first: that the indictment, and especially the third count, did not charge any offense indictable under the laws of Pennsylvania; second, that there was neither proper nor sufficient evidence to convict the defendant; third, that the court did not properly explain to the jury the nature of the offense and the weight of the evidence used to convict the defendant of the offense charged.

As to the motion to quash the third count of the indictment, laying aside the fact that the motion, as disclosed by the record, was not made until after the jury was sworn, which, under the eleventh section of the Act of 1860, P. L. 427, was too late, the only reason assigned in support thereof was "...... it does not charge any offense indictable under the laws of the Commonwealth of Pennsylvania." It did not specify what averments, if any, were lacking to charge an offense, either at common law, or in violation of any statute. As held in Commonwealth v. Haines, 57 Pa. Superior Ct. 616 and Commonwealth v. Carlucci, 48 Pa. Superior Ct. 72, the court should not quash an indictment except in a clear case and should refuse to do so in a doubtful case. Quoting from Commonwealth v. Barge, 11 Pa. Superior Ct. 164, 168: "The Commonwealth must have a chance to correct or amend where the defect is formal or apparent. The defendant can no longer take the chances of a trial, and, if that goes against him, have the judgment arrested for such apparent defects. It is the policy of the law to facilitate the trial of cases upon the merits and formal defects in the pleadings will no longer obstruct it."

The Act of March 31, 1860, P. L. 427, Sec. 11, provides that, "every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of assembly ......"

The indictment was drawn under the provisions of

the Act of April 8, 1861, P. L. 270 (18 P. S. Sec. 2651, page 450) which reads in part as follows: "Any person who shall pretend, for gain or lucre, to predict future events, by cards, tokens, the inspection of the head or hands of any person, or by any one's age, or by consulting the movements of the heavenly bodies; or who shall, for gain or lucre, pretend to effect any purpose by spells, charms, necromancy or incantation, shall be guilty of a misdemeanor ......"

"Whosoever shall pretend, for lucre or gain, to tell fortunes, or foretell future events, by other means than those aforesaid shall be guilty of a misdemeanor ......"

"Any person whose fortune may have been told as aforesaid, shall be a competent witness against all persons charged with any violation of the provisions of this act."

"Any person or persons who shall advise the taking or administering of what are commonly called love-powders or potions, or who shall prepare the same, to be taken or administered, shall be guilty of a misdemeanor ......"

"Any person or persons who shall pretend, for lucre or gain, to enable anyone to get or to recover stolen property, or to tell where lost articles or animals are, or to stop bad luck, or to give good luck, or to put bad luck on any person or animals, or to stop or injure the business of any person, or to injure the health of any person, or to shorten the life of any person, or to give success in business, enterprise, speculation, lottery, lottery numbers or games of chance, or win the affections of any person whatever, for marriage or seduction, or to make one person marry another, to induce any person to alter or make a will in favor of or against any one, or to tell the place where treasure, property, money or valuables are hid, or to tell the place where to dig or search for gold, metals, hidden treasures or

any other articles, or to make one person dispose of property, business or any valuable thing in favor of another, shall be guilty of a misdemeanor . . . . . . ; and the party or parties who may have consulted such persons as have pretended to do any of the acts aforesaid, shall be competent witnesses in all proceedings for the breach or breaches of this act."

The third count of the indictment sets forth that the defendant on a certain day "unlawfully, did fraudulently and wickedly pretend to one Mrs. Alice Hauber that a spell was cast upon her which would cause her death, whereupon the said Mrs. Alice Hauber, on the said date, paid the said Jennie Viscount the sum of One Hundred dollars to remove said spell, . . . . . . The offense complained of was the pretending to effect some purpose for gain or lucre by spells. We believe that the third count charged the offense in substantially the terms of the Act, and the motion to quash was therefore properly overruled.

The second assignment of error complains of the admission of certain testimony of Mrs. Hauber relative to her son's illness and the visit of Mrs. Viscount to the son and what was done on that occasion. The testimony of the son concerning the same transaction was allowed to be introduced without objection, so that the same facts were properly before the Jury for consideration. The offense charged took place over a period of several months. During all this time weird practices were indulged in, in order to remove a so-called spell cast upon Mrs. Hauber. Cemeteries were visited and hearts of animals buried therein to remove this spell; ribbons were symbolically wrapped around the supposed perpetrators of the evil spell, in order to render them powerless; pennies were used to purchase ground from a cemetery and this ground was to be mixed with blood to remove the spell; incense was burned over the hearts of animals to remove it; a special powder was

burned and certain words repeated to remove the spell; substances were sprinkled in front of the homes of the alleged perpetrators of the spell. All these weird things and many more were done in order to remove the spell. The testimony objected to would tend to show that the defendant was familiar with the practices testified to by the witness, Alice Hauber. Quoting from the opinion of the trial judge: "The only purpose of the admission was to show a motive, plan, design, scheme or common purpose previously conceived and partly executed, or show elements in common which logically and reasonably tend to establish a scheme or purpose not wholly covered or explained by evidence of the crime on trial; for this purpose and this alone, it was admitted, there being evidence that the defendant, in company with her chauffeur and Mrs. Hauber, had gone to another cemetery and had there found a heart, which someone had placed in a grave. We believe the evidence was admissible to show the motive and plan and the common scheme of the defendant in placing hearts in cemeteries for the purpose of deceiving her patrons." See Com. v. Chalfa, 313 Pa. 175, 178, 169 A. 564.

The third assignment of error relates to the admission of the testimony of Mrs. Alice Hauber to the effect that she had been with Mrs. Viscount to a cemetery in Windber to bury something, and had seen Mrs. Viscount throwing things from a car before a house on Garfield Street. This was admissible, not for the purpose of establishing another offense than those charged in the indictment, but for the same reasons as stated by the lower court in its opinion from which we have quoted supra.

The fourth assignment of error relates to the admission of the testimony of Helen Bozesky, when the latter testified that she had given powder to Mrs. Viscount's clients and had helped Mrs. Viscount prepare meat in the shape of hearts, and helped Mrs. Viscount bury at

least one of these hearts. The objection was based on the fact that the parties were not identified and the time and place not fixed with definiteness. The testimony was fixed as numerous occasions during the years 1932 and 1933 and the place as in the home of the defendant. The witness did not know the parties to whom she gave the powder. We think that the testimony was competent for the same purposes as stated in the discussion of the second and third assignments of error, supra. Its weight was for the jury.

The fifth assignment of error complains that the testimony of Harry Roof was improperly excluded. This testimony was offered "to contradict the witness Alice Hauber that he and his mother, or at least he, had no part in putting any spell on Dad Roof and Mrs. Hauber."

An examination of the testimony of Alice Hauber fails to disclose any statement by her that Harry Roof was responsible for any spell placed upon her. Mrs. Hauber, on cross-examination, stated that Mrs. Viscount had told her (Mrs. Hauber) that Mrs. Roof was responsible for the spell. The only competent contradictory testimony would have to come from Mrs. Viscount in the form of a denial of this conversation. The testimony offered would in no manner have contradicted the testimony of Mrs. Hauber as to the alleged statement to her by Mrs. Viscount.

The sixth assignment of error relates to alleged error in the charge of the court in misstatement of the evidence of Alice Hauber. Only a general exception to the charge was taken. Notwithstanding the request of the court, at the conclusion of the charge. "Is there anything else counsel for either side would have us add or correct?" no correction or additional instructions were asked for. The misstatement should be called to the court's attention by the party alleging the same, Commonwealth v. Fowner, 97 Pa. Superior Ct. 566. A

party may not sit silently by when a judge misquotes a material point of the testimony and take chances with the verdict, Commonwealth v. Longwell, 79 Pa. Superior Ct. 68. After a careful reading of the entire charge, we believe it fairly presented the issue involved and that there was no substantial error of which appellant has cause for complaint.

The seventh assignment of error relates to the refusal of defendant's motion for new trial based in part upon the alleged error of the court in not fully instructing the jury concerning the weight to be given the testimony of an accomplice, and in not instructing the jury that the testimony of one accomplice would not corroborate the testimony of another accomplice. A careful examination of the testimony does not disclose that any of the witnesses called on the part of the Commonwealth were accomplices, or that any act or part taken by any of these witnesses was for gain or lucre, or that any of them received any part of the money which was paid to the defendant. In addition, the Act of Assembly provides, "any person whose fortune may have been told as aforesaid shall be a competent witness against all persons charged with any violations of the provisions of this act." We find no merit in the contention of appellant on this point.

Appellant contends that there was not sufficient or proper evidence to convict the defendant. The evidence discloses that one Helen Senko and George Kukola were rather intimate, but their parents objected to their being with each other and would not permit them to visit their homes. Helen said she became ill and she was apprised that the defendant could relieve her of her illness; that she and her sister went to the home of Mrs. Viscount, who told her fortune by cards, telling her that the mother of the young man with whom she was going had cast a spell on her; she further testified that the defendant told her that it would be necessary

for her to be relieved of this spell before she would regain her normal health, and that this could be done only by bringing back George Kukola to her, and told her it would be necessary for her to pay her the sum of fifty dollars to bring him back and break this spell; that they afterwards agreed upon the price of $33, one dollar for telling the fortune and thirty-two dollars for removing the spell. It was further testified that she had advised her as to what she should do, and gave her powders to burn, advised her to buy lemons, pins, ribbons, etc., and as to how she was to use them. She further testified that she had paid the defendant, in all, thirty-three dollars. In all this she was corroborated by her sister and, to some extent, by maids who had worked in the home of the defendant, who helped to prepare the powders, etc. Other evidence was given in corroboration of these statements.

The evidence to sustain the third count was to the effect that Mrs. Hauber had become ill; she was called on the telephone and told that she or someone in her home was about to die, and then the defendant afterwards came to her home and persisted in gaining admittance, and then told her fortune; she insisted that a spell had been cast upon Mrs. Hauber; that someone in the household would die, and further appraised her that there was something buried in the cemetery, and until she would find that object, she would not get well; afterwards she and the defendant and the defendant's chauffeur had gone to the cemetery and found the heart. For the services of the defendant, Mrs. Hauber paid her one hundred dollars. There was corroborative evidence to sustain this count in the indictment.

The Act of Assembly is a very meritorious one, designed to protect the ignorant, superstitious and credulous who, like the poor, are always among us. We are all of the opinion that the testimony raised a question for the jury, that the case was ably tried, fairly submit-

ted and the verdict is fully sustained by the evidence.

The assignments of error are overruled, the judgment is affirmed, and it is ordered that the appellant appear in the court below at such time as she may there be called and that she be by that court committed until she has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.