Commonwealth *v.* Kilgallen, Appellant.

Argued November 9, 1953.   Before RHODES, P. J.,
HIRT, ROSS, GUNTHER and WRIGHT, JJ.

*Joseph I. Lewis,* with him *Cooper, Hunter & Lewis,*
for appellant.

*William H. Colvin,* Assistant Deputy Attorney General, with him *Charles D. Coll,* Special Deputy Attorney General, for appellee.

OPINION BY HIRT, J., January 19, 1954:

On the petition of the Attorney General of Pennsylvania a special Investigating Grand Jury was summoned to consider allegations to the effect that elected officials and employes of the City of Pittsburgh had cheated and defrauded the city of its property, supplies and labor. The petition accused Thomas E. Kilgallen, President of the City Council of specific offenses which were submitted to the special grand jury with instructions to resolve the charges. Kilgallen nevertheless was called as a witness to testify before the grand jury which was then investigating his alleged misconduct, along with like charges involving two city employes. Thereupon Kilgallen presented himself before the court and asserting that he in reality was a defendant as to charges submitted to the grand jury, claimed constitutional immunity. The court supported him in his refusal to answer certain specific questions, but Kilgallen, insofar as directed by the court, testified generally before the grand jury. During his examination, upon a renewal of his refusal to testify, Kilgallen was again brought before the court and was directed to answer specific questions notwithstanding his claim of immunity. The Investigating Grand Jury presented Kilgallen for indictment and, at the direction of the court, Attorney General's bills were submitted to the regular Indicting Grand Jury at the February Session, 1951. Six true bills were found against him charging bribery, misdemeanor in office, conspiracy and fraudulent conversion.

Kilgallen moved to quash the indictments and later petitioned the court for leave to take testimony in sup-

port of his motions to quash. In his petition in each case he referred to the fact that he had testified before the Investigating Grand Jury at the direction of the court over his claim of immunity. And he averred that the record of his testimony so given was made available to the regular Grand Jury at the February Sessions, 1951 and was considered by it in returning the indictments against him. Rules were granted on his petition to take the testimony of individual grand jurors and to make the record of the proceedings before the Special Investigating Grand Jury as well as of the Indicting Grand Jury available to the court in support of his motions to quash. After hearing, specially set before the court en banc, the rules granted on Kilgallen's petitions were discharged. He has appealed from these orders. According to the opinion filed in these cases the court was about to discharge the rules on appellant's motions to quash the indictments, when he petitioned for leave to take testimony in support of his motions. In fact, under date of February 15, 1953, docket entries in these cases indicate that the rules on the motions to quash had been discharged on that date. In any view there can be no doubt that the court intended the present orders as final disposition, adverse to the defendant, of his motions to quash. We will so consider them.

In general a defendant charged with crime does not have the right of appeal before his trial and conviction, nor thereafter until after final judgment of sentence. But our Supreme Court in entertaining an appeal under unusual circumstances to prevent injustice, where no sentence had been imposed, said: "this rule should not be held one of universal application": *Commonwealth v. Trunk et al.*, 311 Pa. 555, 565, 167 A. 333. The rule is not inflexible and will yield in exceptional cases. *Commonwealth v. Ragone*, 317 Pa. 113, 176 A. 454. This court has made exception on occasion to the

rigid application of the rule. *Commonwealth v. Haines,* 130 Pa. Superior Ct. 196, 196 A. 621; Cf. *Commonwealth v. Haimbach,* 151 Pa. Superior Ct. 581, 30 A. 2d 653. In *Commonwealth v. Edmiston,* 30 Pa. Superior Ct. 54, we asserted jurisdiction to entertain an appeal where the controlling question involved the validity of an order of the lower court in refusing to quash an indictment. In discussing the question President Judge Rice said: "The district attorney questions our authority to review the action of the quarter sessions in refusing to quash an indictment. We hold, following the Pennsylvania decisions in which the question has been duly considered, that we have such authority in a proper case: Commonwealth v. Bradney, 126 Pa. 199; Commonwealth v. Hall, 23 Pa. Superior Ct. 104. Where, however, the action of the court is purely discretionary it will not be set aside unless there be an abuse of discretion both manifest and flagrant: Rowand v. Commonwealth, 82 Pa. 405; Commonwealth v. Green, 126 Pa. 531; Commonwealth v. Beldham, 15 Pa. Superior Ct. 33; Commonwealth v. Sheppard, 20 Pa. Superior Ct. 417; Commonwealth v. Brown, 23 Pa. Superior Ct. 470. Where the motion to quash was based on an allegation of facts outside of the record proper, our revisory jurisdiction must necessarily be confined to a determination of the question arising upon the latter, taken in connection with the facts or the evidence duly brought upon the record by a bill of exceptions: Commonwealth v. Bradney, 126 Pa. 199; Commonwealth v. Roth, 8 Pa. Superior Ct. 220; Commonwealth v. Mock, 23 Pa. Superior Ct. 51." True, the appeal in the *Edmiston* case was taken after trial, conviction and sentence but the case does not negative our authority under special circumstances to entertain an appeal before trial of the defendant from the refusal to quash an indictment.

In our view the question of the validity of the indictments in these cases is one which under the circumstances should be decided in limine with finality. The nature of the charges affects the public interest, and the grounds for appellant's claim of immunity, provide the exceptional circumstance which justify us in entertaining the appeals in these cases.

In the approach to the question it may be assumed that the lower court erred in compelling Kilgallen, over his claim of immunity, to testify before the Investigating Grand Jury. He was accused of crimes, in the petition of the Attorney General, which were among the matters to be investigated. Cf. *Manko Appeal,* 168 Pa. Superior Ct. 177, 77 A. 2d 700. But it does not follow from that assumption that the present indictments are invalid although they were directed by the lower court upon probable cause inferred from the presentment of the Investigating Grand Jury. The source of the information which prompts an indictment is of little moment. Cf. *Com. v. Brownmiller,* 137 Pa. Superior Ct. 261, 267, 9 A. 2d 155. What the appellant attempted to accomplish in the present proceeding was to establish by testimony of jurors who were members of the regular Indicting Grand Jury that bills against Kilgallen were found on evidence improperly submitted to that body in violation of Kilgallen's Constitutional rights. A grand juror may be called and examined in the public interest, to prevent the obstruction of justice but it has been said "the rule shall not be carried so far as to conflict with the juror's oath. He shall not testify how he or any member of the jury voted, nor what opinion any of them expressed in relation thereto, nor to the act of either which might invalidate the finding of the jury. His action, and the action of his fellow-jurors, must

be shown only by the returns which they make to the court": *Commonwealth v. Kirk,* 141 Pa. Superior Ct., 123, 14 A. 2d 914. There is a presumption of the regularity of the proceedings before a grand jury and "Generally speaking, the rule is that grand jurors cannot be sworn and examined to impeach the validity and correctness of their finding if an indictment has been regularly returned": *Commonwealth v. Judge Smart,* 368 Pa. 630, 634, 84 A. 2d 782. It is noted in the margin of the opinion in that case: "Even the testimony of petit jurors cannot be admitted to impeach their verdict: Redmond v. Pittsburgh Railways Co., 329 Pa. 302, 198 A. 71." The opinion in the *Smart* case referred to *Ziegler v. Commonwealth,* 10 Sadler 404, 14 A. 237, in which on a motion to quash the indictment, the attempt was made to establish by the testimony of grand jurors that a true bill was returned at the insistence of the district attorney notwithstanding the grand jury had decided to ignore the bill for lack of evidence. And the ruling of that case was quoted with this comment: "The trial court denied the motion, and this court, in a per curiam opinion, asserted that to have quashed the indictment for the reason assigned would have been 'to introduce a very bad practice, and one heretofore unknown to the criminal jurisprudence of Pennsylvania. That an indictment, regularly found and returned to the court, should be impeached by the testimony of the grand jurors who found the bill is a proposition that cannot be sustained' ".

The affidavit upon which appellant relies in questioning the legality of the indictments against him is that of a member of the regular grand jury. In commenting upon a similar affidavit in the *Smart* case, based upon an interview with a grand juror, it was

said by the then Mr. Justice STERN: "Indeed it does not even appear whether the alleged interview was *actively sought* by defendant or someone on his behalf, in either which case such action would have been unethical, improper and forbidden by public policy." The practice of soliciting statements from members of a grand jury, to impeach its findings, is to be condemned. For that reason also appellant must be held to the rigid requirements of the law in his present endeavor. The affidavit states: ". . . that testimony given by said Thomas E. Kilgallen before the Special Investigating Grand Jury, which preceded the Indicting Grand Jury of which the affiant was a member, was at all times available to the affiant and the other members of the Grand Jury and that excerpts from the testimony of Thomas E. Kilgallen before said Special Investigating Grand Jury were read by members of the Attorney General's staff to the aforesaid Indicting Grand Jury." Under these averments the testimony of Kilgallen could have been made "available" only by the act or the connivance of the deputy Attorney General in charge of the grand jury, and the affidavit charges misconduct of that prosecuting officer. In the Smart case it is said "that such an investigation should never, under any circumstances, be instituted except on the basis of credible, detailed, sworn and persuasive averments . . ."; and further (quoting with approval from United States v. American Medical Ass'n, 26 F. Supp. 429) "an inquiry as to whether the finding of an indictment had been improperly induced was 'justified only where by proper verified pleading a clear and positive showing is made of gross and prejudicial irregularity influencing the grand jury in returning an indictment.'" The present affidavit is couched in general terms and fails to

set forth the substance of the testimony of Kilgallen given by him before the Investigating Grand Jury, which allegedly was made "available" or read to the Indicting Grand Jury. And even if that testimony was before the regular grand jury, it cannot be assumed that the indictments were induced by it. When Kilgallen claimed immunity as a witness in the prior grand jury investigation, he was not compelled to testify generally and it may be assumed, in the absence of an averment to the contrary, that the specific questions comprising his testimony which the court directed him to answer, did not incriminate him. In *Commonwealth v. Gross,* 172 Pa. Superior Ct. 85, 89, 92 A. 2d 251 Judge RENO referred to the fact that the Investigating Grand Jury presented Kilgallen with two city employes "upon the testimony of a hundred other witnesses." And the indictments in the present cases have endorsed upon them the names of no fewer than 9 witnesses who presumably were called.

In *Commonwealth v. Gross,* supra, where we reinstated an indictment containing similar charges which had been returned by the same Grand Jury, we said: "A court should not sustain a motion to quash, based upon allegations of extraneous factors, 'except in a clear case where it is convinced that harm has been done to the defendant by improper conduct that interfered with his substantial rights': Com. v. Brownmiller, 141 Pa. Superior Ct. 107, 116, 14 A.2d 907, citing Com. v. Haines, 57 Pa. Superior Ct. 616, and Com. v. Viscount, 118 Pa. Superior Ct. 595, 179 A. 858."

The orders are affirmed.

PER CURIAM, March 19, 1954:

AND NOW, March 19, 1954, reargument refused. But, because of the importance of the legal question

involved, the case is certified to the Supreme Court under Section 10 of the Act of June 24, 1895, P. L. 212, 17 P.S. §197.

———

DISSENTING OPINION BY ROSS, J., April 8, 1954:

I am unable to agree with the majority opinion and, therefore, dissent.

At the time the court below considered the motion of the defendant, the averments in support thereof were not denied, the Commonwealth had in effect demurred. Therefore, if the averments taken as true were sufficient in law, the motion to take testimony should have been granted.

The averments clearly present the case of the defendant. He claimed privilege under Art. I, sec. 9 of the Constitution of Pennsylvania when called to testify before an investigating grand jury, but by authority of Art. 3, sec. 32 he was compelled to testify despite claim of privilege.

Art. 3, sec. 32 of the Constitution provides: "Any person may be compelled to testify . . . against any person who may be charged with having committed the offense of bribery . . . and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; *but such testimony shall not afterwards be used against him in any judicial proceeding,* except for perjury . . ." (Italics supplied.) The prohibition of the Constitution does not attempt to provide complete immunity for one compelled to testify. The prohibition is only against the "use" of *such* testimony as is compelled. However, the provision is not mere surplusage and whatever the extent of the protection the Constitution affords, one

compelled to testify is entitled to it. If the compelled testimony were read to or made available to the grand jury as evidence against the defendant, it cannot be maintained that such action is not a violation of the Constitution. It is using the testimony against him. The proceedings of the indicting grand jury are a judicial proceeding. To hold otherwise is to place an unduly restricted construction on both the terms "used against" and "judicial proceeding".

Whether or not there was other evidence presented to the grand jury does not alter the fact that the presenting of the compelled testimony was a direct contravention of the constitutional prohibition. Whether or not the jurors were influenced by the presence of such prohibited testimony is immaterial, its presence denies the defendant a constitutionally guaranteed privilege. Had there been a trial and a conviction and the same testimony presented against the defendant, the conviction could not stand notwithstanding the fact that other sufficient evidence might have supported the verdict. The breach of a constitutional right would have vitiated the proceeding.

Since the Commonwealth has not denied the averments but in effect has demurred, it does not seem proper to assume that if testimony was presented it could not be presumed to be criminating. On the contrary, since there has been no denial it would seem that it must be presumed that such testimony was criminating. Apparently the framers of the Constitution so considered it since its use was proscribed for any purpose except for prosecution for perjury in testifying. If the defendant's constitutional rights were invaded in the proceeding which resulted in his being indicted there is no more reason for upholding the indictment than there would be for upholding a conviction obtained in a proceeding where the same thing had occurred.

The question of law should have been answered then in the defendant's favor and testimony taken to determine if in fact such averments were true.

The cases that express a reluctance to inquire into the secrecy of the grand jury all provide that under some circumstances it may be proper to do so. Indictments have been quashed for reasons comparatively technical. No case has gone so far as to say that the breach of a constitutional prohibition is not an injustice that the court has no power to correct. The requirements set forth by the Supreme Court with respect to proper pleading are fully met; there is no doubt as to defendant's position and contentions—but no court has answered them. There are admittedly a number of occasions when the testimony of a grand juror is proper. Since the purpose here would be to testify as to what was before the grand jury and not what they (or he) thought of it, there would be no impeachment of his own verdict. He would be called to testify as to an occurrence and not as to why a decision was reached. Since the defendant was a witness he can waive any right he as an individual might have to the benefit of the secrecy rule. The jurors will not be prejudiced as there is no attempt to disclose their deliberations nor to direct a charge of misconduct against them. *The Commonwealth is never prejudiced by a proceeding undertaken to assure protection of a fundamental right inhering in a citizen charged with a serious offense.*

I would reverse the orders of the court below and make absolute the rule to take testimony to determine whether the averments of the affidavit of the grand juror, Paul Normandy, are true. If they are, in my opinion, it is clear that the defendant's constitutional rights were violated.