Commonwealth *v.* Fudeman, Appellant.

Argued June 9, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

548

*Jacob Kossman,* with him *Samuel R. Liever,* for appellant.

*Victor Wright,* Deputy Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION PER CURIAM, June 11, 1958:

AND NOW, June 11, 1958, after argument on motion to quash appeal and answer thereto, the motion to quash is granted, and appeal No. 219 October Term, 1958, is quashed for the reason that the order of the Court of Quarter Sessions of Berks County dismissing defendant's petition to quash indictment from which said appeal has been taken is interlocutory and, under the circumstances, is not an appealable order. "Unless a bill of indictment is defective on its face, when a defendant moves to quash an indictment prior to trial, and his motion is denied by the trial Court, the Court's order is interlocutory and hence, not appealable." *Commonwealth v. O'Brien,* 389 Pa. 109.

---

DISSENTING OPINION BY GUNTHER, J.:

I find it necessary to dissent from the order of the Court and the reason therein expressed. When illegal, unconstitutional and unwarranted appendages and

practices are sanctioned to the time honored, orderly processes and functions of a grand jury, and high-handed procedures cannot be challenged before an accused is forced to an expensive trial and possible conviction, the processes of the law are, indeed, in a deplorable state of disrepair. But I am not willing to concede this, nor am I willing to hide behind the cloak of interlocutory appeals when basic and fundamental rights of a citizen are to be safeguarded.

On November 13, 1957, a complaint was lodged against appellant, Alexander Fudeman, by the Pennsylvania State Police, charging him with unlawfully intimidating and extorting money. On November 15 and December 4, 1957, hearings on this charge were held by the Honorable WARREN K. HESS, sitting as a committing magistrate, and, at the conclusion of said hearings, appellant was held for the March 1958 grand jury. On January 15, 1958, the District Attorney of Berks County, together with a Deputy Attorney General, petitioned the court below to summon the December, 1957 grand jury prior to the convening of the March, 1958 grand jury. This grand jury was discharged on November 29, 1957.[1] Immediately upon presentation of said petition, an order was entered to convene said December grand jury for January 24, 1958.

Prior to the convening of the grand jury, certain of its members had unauthorized communications and contacts with each other in connection with this and other cases arising out of the same set of circumstances

---

[1] The order convening the grand jury does state that the grand jury "were not excused from further service" and that authority for convening the same is found in the Act of 1875, March 18, P. L. 28, section 2; 1927, April 27, P. L. 420, section 2, 17 P.S. Section 1351. But outside of this bare allegation, there is nothing in the record to justify that conclusion.

and the Commonwealth frankly concedes that an officer of the Pennsylvania State Police interviewed at least one of the grand jurors. On January 24, 1958, the December grand jury convened. The same foreman was appointed and the jury was re-sworn. Prior to the swearing in, however, counsel for the Commonwealth, in the absence of the accused or his counsel, questioned the grand jury relative to the contacts made one with another but without pressing his inquiry too far. The same day, the case of the appellant was presented and a true bill was returned and marked as if found on March 24, 1958. This was later corrected by the court below to January 24, 1958. This bill was signed by Thomas D. McBride, Attorney General, and not by the District Attorney of Berks County.

On January 27, 1958, a petition to quash the indictment was filed, alleging, inter alia, that the indictment was found at a different term from the one to which it was directed; that no notice was given to the accused or his counsel and, therefore, no opportunity was given to challenge the array; that the accused's constitutional rights were violated in that members of the grand jury had certain communications and contacts with each other prior to deliberations, and that a state policeman contacted the grand jury and interviewed at least one of them, which action was harmful and deprived him of a fair and impartial hearing; that had he known these matters, he would have challenged the array. A rule to show cause was issued on this petition and on March 3, 1958, the petition to quash was dismissed. This appeal followed, but it died prematurely. It was quashed as interlocutory.

The sale reason assigned by the Majority of the Court for quashing the appeal is that it is interlocutory and, under the circumstances, is not an appealable order. I do not consider that to be the question involved

on this appeal. If that were the real reason, this Court would not have considered favorably several cases decided by it which were all, strictly speaking, interlocutory: *Commonwealth v. Kilgallen*, 175 Pa. Superior Ct. 52, 103 A. 2d 183; *Commonwealth v. Haimbach*, 151 Pa. Superior Ct. 581, 30 A. 2d 653; *Commonwealth v. Haines*, 130 Pa. Superior Ct. 196, 196 A. 621; *Commonwealth v. Edmiston*, 30 Pa. Superior Ct. 54. The real issue here raised, however, is whether the procedures and practices here resorted to violated the basic and fundamental rights of the accused. This the Majority is unwilling to discuss. How, then, are we to determine whether the facts of this case come under the exception to interlocutory appeals recognized by this Court as well as the Supreme Court?

Without attempting to dig too deeply into the circumstances, I do wish to point out a few of the salient factors which, in my view, do make this an unusual case and which involve the safeguarding of fundamental rights protected under both State and Federal Constitutions.

1. The Act of 1875, March 18, P. L. 28, section 2, as amended by the Act of 1927, April 27, P. L. 420, section 2, 17 P.S. section 1351, provides that "the judges of the courts of quarter sessions and oyer and terminer shall also have power to hold over the grand jury summoned at any term, during the interim and until the grand jury of the next succeeding term is assembled, and shall have full power, without the issuing of a new venire, to call such grand jury to assemble in session and dispose of any business *properly laid* before a grand jury at any regular term." (Emphasis added). If a matter, therefore, is not properly laid before a grand jury, it is violative of this section, of Article 1, section 9 of our constitution as well as the due process clause of the federal constitution.

There is no question that a grand jury may be dismissed from time to time during the period for which it was convened and again summoned back when any matters are laid before it. But when the record does not show that the grand jury has been discharged conditionally, it will be presumed to have been legally and properly discharged; it cannot be re-summoned and reorganized. No grand jury can be created or brought into existence except in the manner directed by statute. In this respect, I see no difference between grand jurors and petit jurors who, upon being discharged from further service and having separated, cannot again be reassembled. The statute provides a method for keeping a grand jury during the term, and even for one week beyond the term, and the requirements of these statutes should be strictly followed. When, therefore, the grand jury has been discharged, its official capacity at once comes to an end and they are but ordinary citizens. To set aside the order of discharge would not restore them to their former official position. Their official capacity having once terminated, it can only be again created by the method provided by statute.

For the purpose of argument only, I concede the possibility that under certain, extremely unusual or important circumstances, the grand jury might be recalled after discharge. But that right, under the statute cited supra, should be preserved before the discharge of the grand jury and should be exercised under extremely unusual or important circumstances. From the record before us, there is nothing to indicate any pressing or unusual circumstance to justify such a recall.

2. The right to challenge the array or to challenge individual grand jurors for cause must be given. That is the reason why notice must be given to an accused if the complaint is brought before a grand jury other

than the one to which it was made returnable. The valid selection of a grand jury is a constitutionally protected right and the right to object to a grand jury presupposes an opportunity to exercise that right. *Reece v. State of Georgia,* 350 U. S. 85, 76 S. Ct. 167, 100 L. Ed. 77. If the prosecutor is derelict in that duty, the accused has suffered a wrong which, as the circumstances of this case demonstrate, is not wishful or fanciful. The deputy attorney general felt that it was important to him to question the grand jury about the conversations the members or others might have had before being recalled, but did not deem it too important to give the accused or his counsel the opportunity to do likewise and to actually find out what these conversations were and with whom they were made. The deputy attorney general knew about the conversations before the grand jury was actually convened and also knew that one of his investigating police officers actually interviewed at least one member of the grand jury, but he did not think this important enough to convey to the only other person who might be vitally affected thereby. When this information became known to the accused, he acted promptly and diligently in bringing this to the attention of the court below, assigning as error the failure to be notified and the opportunity to delve deeper into these circumstances. Since the court knew about these circumstances, why didn't the court, on its own, also notify the accused or his counsel instead of only the prosecuting official? As an impartial arbiter, this was the least that should have been done.

3. There can be no justification for a state police officer to interview the grand jury. This assumed prerogative tainted the entire proceedings with illegality. The grand jury is not the arm of the prosecuting officials but that of the court. If any investiga-

tion was required to uncover illegality, that should have been conducted by the court and in the presence of both the prosecuting official as well as a representative of the accused. This high-handed usurpation of authority cannot be sanctioned by us and has been branded as illegal by the federal courts: *Gold v. United States*, 352 U. S. 985, 1 L. Ed. 2d 360; *Remmer v. United States*, 347 U. S. 227, 74 S. Ct. 450, 98 L. Ed. 654; *Remmer v. United States*, 350 U. S.377, 76 S. Ct. 425, 100 L. Ed. 435. It makes no difference whether the jury involved is a petit jury or a grand jury. The illegality of such private conduct or communication and the harm caused thereby is a difference without distinction. Why such tactics cannot be branded as illegal and violative of the accused's rights until after conviction is difficult to understand. Illegality should be branded as such and corrective action taken whenever and wherever found. It is small solace to a dangerously ill patient to be advised by his doctor that medication will not be administered now because he might get better later on, to await that contingency.

Can it be said that reconvening a grand jury, which has been discharged, to consider a matter which the court below, by its own action delegated to another grand jury, cannot involve the question of whether basic and fundamental rights were violated? May we summarily say, when considering the protection of constitutional rights, that a "preview" by members of a grand jury or a private discussion of the facts and issues before being called into session does not and cannot raise the question whether such later proceedings are tainted? And if it does not, may we also say, summarily, that a police officer of this Commonwealth can, with impunity, contact and interview members of a grand jury concerning the very case to be presented to it and conclude, again summarily, that the basic and

fundamental rights we are all so zealous in protecting have not been violated? Can we say that these questions are merely interlocutory and do not taint or violate basic and fundamental rights? I cannot, and this Court, on several occasions, has stated it cannot! But it does say so today and relies on the authority of *Commonwealth v. O'Brien*, 389 Pa. 109, 132 A. 2d 265.

The *O'Brien* case is no authority for the propositions here raised. This case only decided that unless a bill of indictment is defective on its face, a refusal by the lower court to quash an indictment, prior to trial, cannot be appealed as such order of refusal is interlocutory. The answer to the question here raised is given by the Supreme Court in *Commonwealth v. Kilgallen*, 379 Pa. 315, 108 A. 2d 780, where it held that special and exceptional circumstances appearing, the appellate court will review the action of the lower court, especially when a defendant's constitutional rights have been violated. We have said substantially the same thing when this same case was before us: See *Commonwealth v. Kilgallen*, 175 Pa. Superior Ct. 52, 103 A. 2d 183. If the principles enunciated in the *Kilgallen* case, supra, were not the law, the Supreme Court would have plainly and unmistakably have said so in the *O'Brien* case, supra. But it did not do so! However, even under the *O'Brien* case, supra, this case should have been sustained. The indictment was defective on its face! The indictment was returned by the 1957 *December* grand jury to a *March session, 1958*. An examination of the cases reveals no authority where one grand jury may return a bill to a future and at that time non-existing term of court. Even in the case of *Commonwealth v. Bozzi*, 178 Pa. Superior Ct. 224, 116 A. 2d 290, where a defendant was held for the next term of court and the case was submitted to the grand jury then in session, it was returned to the existing

session of court and not to a future session. Where does any grand jury claim to derive such unprecedented powers? They cannot be found in the case law, the statutes or in the constitutions either of this Commonwealth or of the United States.

For the reasons stated I am constrained to dissent and state that the petition to quash this appeal should have been denied and the appeal heard on its merits.

DISSENTING OPINION BY WATKINS, J.:

I respectfully dissent from the order of the majority quashing this appeal on the ground that it is interlocutory and that under the case of *Commonwealth v. O'Brien,* 389 Pa. 109, 132 A. 2d 265 (1957), it is not an appealable order.

I do not believe that the Supreme Court in the *O'Brien* case decided any such thing. It has always been the general rule that "unless a bill of indictment is defective on its face, when a defendant moves to quash an indictment prior to trial, and his motion is denied by the trial court, the court's order is interlocutory and hence not appealable." We have sustained that general rule in a multitude of cases.

Similarly we have held that appeals from orders denying a new trial and from suspended sentences are interlocutory and not appealable. *Commonwealth v. Elias,* 186 Pa. Superior Ct. 137, 140 A. 2d 341. But an exception is made where circumstances are unusual and justice requires the exercise of appellate review at an intermediate stage of the proceedings. *Commonwealth v. Fox,* 181 Pa. Superior Ct. 292, 295, 296, 124 A. 2d 628. As was well said by Mr. Justice SCHAFFER, speaking for the Supreme Court in *Commonwealth v. Trunk,* 311 Pa. 555, 565, 167 Atl. 333, 337: "While it

may be true generally that appeals may not be taken in criminal proceedings where judgment of sentence has not been passed, this rule should not be one of universal application. There are instances where great injustice would thereby be done to defendants." Speaking of the exception of the rule that an appeal may be had only from judgment of sentence, President Judge KELLER said, in *Commonwealth ex rel. Paige v. Smith*, 130 Pa. Superior Ct. 536, 542, 198 A. 812, 815: "The extent of that modification has not been exactly stated, but it should be applied to cases where the quashing of such an appeal might work injustice to the defendant." For a review of the exceptions see *Commonwealth v. Elias*, supra.

The leading case deciding that an appeal will lie after indictment and prior to trial when exceptional circumstances indicate the invasion of substantial legal and constitutional rights, is *Commonwealth v. Kilgallen*, 379 Pa. 315, 108 A. 2d 780. Here the appeal was allowed to prevent injustice. Mr. Justice CHIDSEY, speaking for the Supreme Court at page 320, said:

"The Commonwealth contended in the Superior Court and contends here that no appeal lies from the refusal of a motion to quash an indictment. It is certainly true, as stated by the Superior Court, that ordinarily a defendant charged with crime does not have the right of appeal before his trial and conviction nor thereafter until final judgment and sentence. However, the Superior Court held that there may be exceptions to this rule, citing Superior and Supreme Court cases, inter alia, Commonwealth v. Trunk et al., 311 Pa. 555, 167 A. 333, where at p. 565 it was stated that the rule '. . . should not be held one of universal application.', and Commonwealth v. Ragone, 317 Pa. 113, 176 A. 454, where this Court at p. 126 said: '. . . But this rule has, in exceptional cases and to safeguard basic

human rights, been construed as not being one of unyielding inflexibility.'. The Superior Court went on to say: 'In our view the question of the validity of the indictments in these cases is one which under the circumstances should be decided in limine with finality. The nature of the charges affects the public interest, and the grounds for appellant's claim of immunity, provide the exceptional circumstance which justify us in entertaining the appeals in these cases.'. We are not disposed to disagree with this conclusion."

The matter is as simple as this: the Supreme Court in the *Kilgallen* case held that to prevent injustice the appeal should be heard, while in the *O'Brien* case, the facts did not take it out of the general rule. Certainly the pronouncement of the Supreme Court in the *O'Brien* case did not decide that where an individual's fundamental, legal or constitutional rights are violated, that in order to protect them, he is denied an immediate remedy but must assume the burden and expense, the mental and physical anguish, the public disgrace of a trial and must be found guilty and sentenced, before he has a remedy. Justice MUSMANNO, who filed a vigorous dissent in the *O'Brien* case, feeling that the appeal did lie, said at page 116: "The Majority of this Court is of the impression that the Superior Court should have quashed the appeal to that Court and not have discussed the merits at all. I believe it was very necessary to discuss the merits which the Superior Court did in a very capable fashion. I only regret that it did not then quash the indictment on the basis that the lower Court failed in its duty to consider the matter before the horse was stolen, instead of considering it after the defendant's rights had been taken away on that horse's back."

In the case before us the defendant complains that the indictment is void in that it was not signed and

presented to the grand jury by the District Attorney, but by the Attorney General who, it is alleged, was conducting the prosecution without validly superseding the District Attorney, and, more important, that there were unauthorized discussions among the members of the grand jury and investigation of members of the grand jury by the Pennsylvania State Police before the indictment of this defendant was found by the said grand jury.

The defendant makes a point that the indictment is not regular on its face in that it is so signed as an additional reason why this case does not fall within the reasoning of the *O'Brien* case.

I believe that this is the kind of case where fundamental rights of the defendant are involved; that it does fall within the meaning of the exception, and that in order to do justice, the petition to quash should be denied and the appeal heard on the merits.