## Manko Appeal.

Argued November 21, 1950. Before HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (RHODES, P. J., absent).

*James P. McArdle* and *P. J. McArdle,* for appellants.

*Maurice H. Goldstein,* Assistant Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General and *W. Denning Stewart,* Special Deputy Attorney General, for appellee.

*Jason Richardson* and *Frank R. Bolte,* filed a brief for amicus curiae.

OPINION BY ARNOLD, J., January 12, 1951:

These two cases were argued together and will be disposed of in one opinion.

A special investigating grand jury was summoned in Allegheny County upon the petition of the Attorney General of Pennsylvania to inquire particularly concerning the defrauding of the City of Pittsburgh by the use of labor, materials and supplies for private purposes. The petition set forth: (a) That Thomas E. Kilgallen, president of city council, together with one Howard Gross (appellant), supervisor of the department of lands and buildings of the city, unlawfully and corruptly used city labor and materials upon property of Kilgallen in Butler County, and upon the property of others in Butler and Allegheny Counties. (b) That Gross and George Manko (appellants) unlawfully and corruptly appropriated labor and materials of the city for the private use and benefit of Gross. (c) That thereby the city was cheated and defrauded. (d) That Kilgallen, Gross, Manko and others entered into a general conspiracy to cheat and defraud the city by the

means aforesaid, for the private benefit of Kilgallen and other officials and city employes.[1]

The court below charged the special grand jury to investigate the aforementioned charges, and that if "the evidence warrants the indictment of a particular individual for any reason, you will recommend his indictment . . ."

It will thus be seen that Gross and Manko, severally appellants here, were accused, *by name*, of particular offenses and of a general conspiracy to misappropriate city labor and supplies.

Gross and Manko were called to testify before the grand jury and each declined to answer certain questions on the ground that the answers would incriminate him. This being reported to the court, each was adjudged guilty of contempt; and upon refusing to purge himself of the contempt, by answering the questions, was sentenced to a fine and imprisonment.

Article I, Section 9, of the Pennsylvania Constitution, as far as pertinent, reads: "In all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself . . ."

Since each of the appellants, by name, was accused of crime in the petition of the Attorney General, any action of the grand jury recommending indictments against Gross and Manko, was as effective to lay an

---

[1] The petition also averred: "That as a result of his investigation . . . your petitioner has competent, credible and trustworthy evidence showing that . . . elected officials of the City of Pittsburgh and employees [thereof] . . . committed a series of unlawful acts and conspired to cheat and defraud the City . . . of its property, supplies and labor . . . and unlawfully appropriated to their own use said property, supplies and labor . . ." and "That from these competent, credible and trustworthy sources it has been developed and established to the satisfaction of your petitioner that the following cognate offenses have been committed . . ."

indictment before a grand jury as a prosecution begun by the filing of an affidavit before a committing magistrate,—and certainly no one can claim that the Commonwealth could compel the defendant to testify before such a magistrate.

Where one is charged with a specific crime or crimes in a petition for the calling of an investigating grand jury, such person is not merely a witness. The only purpose of calling him as a witness is to obtain proof of the criminal charges, i.e. to have him give evidence against himself. He therefore cannot be compelled to testify before the grand jury if he claims his constitutional privilege. See the very able opinion of Hon. W. RUSSELL CARR in *Commonwealth v. Bane,* 39 D. & C. 664, the reasoning of which we adopt. To say that a person accused of a crime can be compelled to testify as a witness before an investigating grand jury merely because that jury can only *recommend* an indictment, is fallacious.

We are also of the opinion that answers to the questions asked each of the appellants might very well be incriminatory.[2] While the witness, of course, is not the sole judge of whether the answer might be incriminat-

---

[2] In the Gross case the questions were:

"Was overtime which was paid by the City of Pittsburgh to workmen under your supervision first put in by you to some recording clerk?"

"What did you add [to the value of your house] . . .?"

"[What is] the value [of your house] . . .?"

In the Manko case the questions were:

"Did you ever have any cement on that truck?" (Manko was charged with taking city material from Pittsburgh to the home of Gross and the home of Kilgallen in Butler County. He had been discharged from his position in the City of Pittsburgh after councilmanic investigation.)

"Did you ever testify before City Council that cement was on the truck at any time that day?"

ing, yet each question must be viewed in the light of whether the answer *can* implicate the witness. The classic American definition of an incriminating question is found in the opinion of Chief Justice MARSHALL in *United States v. Burr (in re Willie)* 25 Fed. Cases 38. It was followed by this Court in the case of *Contempt of Myers and Brei,* 83 Pa. Superior Ct. 383, 389, and is as follows: "When a question is propounded, it belongs to the court to consider and to decide whether *any* direct answer to it *can* implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims."[3] (Italics supplied.) Wigmore on Evidence, 3d ed. §2260, states the rule: "Most criminal acts are made up of two or more subordinate facts, each essential to the completed crime. For example, embezzlement assumes (1) a position of trust or employment, (2) the receipt of valuables by the incumbent, (3) their improper disposal. So also arson at common law involves (1) the existence of a structure,

---

"Did you testify before [at the councilmanic investigation] that there was cement on the truck?"

"How many times were you at the Kilgallen house?"

"Did you ever work on the Gross property on your own time?"

"Did you ever work on the Kilgallen property on your own time . . . And I mean by your own time, time in which you were not paid by the City of Pittsburgh?"

[3] The classic English definition is substantially the same and is quoted in *Commonwealth v. Bolger,* 42 Pa. Superior Ct. 115, 229 Pa. 597, 602, 79 A. 113.

(2) its use as a dwelling, (3) the setting fire by the accused, (4) a destruction of some part of the structure. Again, forgery by utterance involves (1) possession by the accused (2) of a certain kind of document (3) false in its nature, and (4) its transfer to another person. In all these instances, no one of the component facts constitutes of itself the crime, and yet every one of them must be established in order to establish the crime. It is therefore obvious that unless the privilege is to remain an empty formula easily evaded, its protection must extend to each one of these facts taken separately, as well as to the general whole. It would be immaterial whether the evasion consisted in obtaining from the witness himself all these component facts by separate inquiries, or in obtaining one such fact by inquiry of himself and the remainder by other proof; the difference would be merely in the quantity of evasion; for it would be the witness' own disclosure which still would be essential to complete the proof, and his own disclosure would thus essentially involve a criminating fact." See also *Blau v. United States,* 340 U. S. 159, 71 S. Ct. 223.

For these reasons we reversed the respective judgments.