Opinion by
Hoffman, J.,
On March 30, 1969, the District Attorney of Philadelphia filed a petition requesting a grand jury investigation into a variety of areas in which municipal corruption was alleged to exist. In April of 1969 the grand jury was convened under special order of the Court of Common Pleas of Philadelphia.
The District Attorney’s petition charged that there was “widespread corruption” in a series of programs of the Philadelphia Housing Authority. Included in these programs was the “Used House” program, under which existing dwellings were renovated and rehabilitated to provide living quarters for low income families. The petition alleged that a number of developers engaged in rehabilitating old houses, under contract with the Housing Authority, had fraudulently secured payment for the building and rehabilitation of exterior walls. Some of these developers were specifically iden *32 tified, but appellees were not referred to by name in tbe petition. The petition did assert, in Paragraph 13, that the specific instances of fraud which it described were “part of a system of similar or related crimes . . . whereby numerous developers and contractors, and personnel of the Housing Authority, some of whom to your Petitioner are unknown, conspired to defraud the Philadelphia Housing Authority . . . .”
On October 2, 1969, appellees Burstein and Shapiro were called to the office of the District Attorney where they were questioned about their acts in connection with the public housing program then under the scrutiny of the District Attorney’s office. Appellees were told by members of the District Attorney’s office that their answers to the questions asked were not satisfactory, and that they were subject to immediate arrest. They were informed of the pending grand jury proceedings, the nature of those proceedings, and they were warned that their testimony would be recorded for further use in court.
On October 9, 1969, appellees Burstein and Shapiro appeared before the Honorable Joseph Sloane, who was supervising the investigating grand jury. Judge Sloane informed appellees that while they were in the grand jury room, they had a right not to answer any question they did not understand, or which they thought would hurt them criminally. In the latter case, they were told that they would be brought before the court, who would decide if the question or questions must be answered.
The appellees were then taken before the investigating grand jury, and they answered various questions that were put to them by the Assistant District Attorney. Five days later on October 14, 1969, the grand jury presented its Seventh Presentment, which recommended that appellees Columbia Investment Corpora *33 tion, Burstein, and Shapiro be indicted for false pretense and conspiracy on account of fifty-eight allegedly defective and unbuilt walls.
Upon receiving the Seventh Presentment, Judge Sloanb directed that the Presentment and bills of indictment based upon it be submitted to an indicting grand jury. Pursuant to that direction the District Attorney submitted the present bills to the October, 1969, grand jury, which returned one hundred fifty-six indictments against appellees. The only evidence presented against appellees before the indicting grand jury was the reading of the Seventh Presentment by a detective representing the District Attorney’s office.
Appellees contend that prior to their appearance before the investigating grand jury they had been classified as more than mere potential defendants, that they were in fact targets of the prosecution. They argue that it was therefore improper for the presiding judge not to warn them of certain fundamental rights which they possessed under the decisions of the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966), and Escobedo v. Illinois, 378 U.S. 478 (1964).
1
At the time appellees appeared before the investigating grand jury they had already been confronted by members of the District Attorney’s office in regard to their alleged illegal activities. They had been questioned by the District Attorney’s office and threatened with arrest. The Commonwealth in its brief admits that “[f]rom the tenor of the questions asked both appellees at that time [during the questioning by the Assistant District Attorney at the grand jury proceedings] it is clear that the grand jury was in possession of virtually all (if not all) of the aforementioned in *34 formation,[1] and that none of this information was obtained from appellees.” Thus, it is clear that at the time of their appearance before the investigating grand jury, appellees were not merely witnesses, but rather in the status of accused persons.
The Commonwealth contends that the recent decision by our Supreme Court in Commonwealth v. McCloskey, 443 Pa. 117, 277 A. 2d 764 (1971), is dispositive of all the issues that are raised by appellees in this appeal. We do not agree.
In McCloskey, the Supreme Court considered a fact situation where witnesses had possible knowledge of subjects under investigation. McCloskey held that these witnesses should be informed of their rights not to answer questions which they might believe will incriminate them, and that if a problem should arise while they were inside the grand jury room, “the witness can come before the court accompanied by counsel and obtain a ruling as to whether he should answer the question.” Commonwealth v. McCloskey, supra at 143.
The Court further held that “[n]either Escobedo nor Miranda were even remotely concerned with right to counsel before an investigating grand jury. The interpretation urged by appellees that counsel be accessi *35 ble at all times during a witness’s appearance is an unwarranted extension of the teaching of those decisions.” Commonwealth v. McCloskey, supra at 142.
The instant case, however, involves individuals who were not mere witnesses before the grand jury. These individuals were in the status of accused persons about to be recommended for indictment at the time they were compelled to testify.
II
Article I, §9 of the Constitution of Pennsylvania provides that “[i]n all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself . . . .” A clear violation of the rights of Bur-stein and Shapiro under Article I, §9, and the Fifth Amendment to the United States Constitution occurred when they were compelled to take the oath and submit themselves to interrogation before the investigating grand jury, which was about to recommend their indictment.
In Manko Appeal, 168 Pa. Superior Ct. 177, 77 A. 2d 700 (1951), this Court was first presented with the question of a violation of an individual’s right not to testify before a grand jury. In that case the petition for the investigation alleged that one Kilgallen, President of the Pittsburgh City Council, and Gross and Manko, City employees, conspired to defraud the City by using City labor and materials to construct improvements on the private property of Kilgallen and Gross. Kilgallen, Gross, and Manko were subpoenaed to testify before the grand jury, and upon their refusal to do so were sentenced for contempt.[2] In reversing the con *36 tempt convictions of Gross and Manko, this Court held that “[wjhere one is charged with a specific crime or crimes in a petition for the calling of an investigating grand jury, such person is not merely a witness. The only purpose of calling him as a witness is to obtain proof of the criminal charges, i.e., to have him give evidence against himself .... To say that a person accused of a crime can be compelled to testify as a witness before an investigating grand jury merely because that can only recommend an indictment is fallacious.” Manko Appeal, supra at 180.
In the companion case of Commonwealth v. Kilgallen, 379 Pa. 315, 108 A. 2d 780 (1954), our Supreme Court ruled that Kilgallen (who did testify before the grand jury) was entitled to a hearing on his allegation that the testimony extracted from him, by the investigating grand jury, had been made available to the indicting grand jury. If the allegation were proved, the indictment against Kilgallen would have had to be quashed. The Court in Kilgallen specifically approved the holding in Manko Appeal by stating “where one is charged with a specific crime or crimes in a petition for the calling of an investigatory grand jury, he cannot be compelled to testify before such grand jury if he claims his constitutional privilege: Manko Appeal, 168 Pa. Superior Ct. 177, 77 A. 2d 700. We are in accord with this statement of law. The exercise of the privilege of the accused against self-incrimination is not confined to his trial but applies to all stages of a criminal proceeding against him: Commonwealth v. Musto, 348 Pa. 300, 35 A. 2d 307. It would be a perversion of the privilege to compel the accused to assist in his own prosecution.” Commonwealth v. Kilgallen, supra at 321.
Both Kilgallen and Manko preceded the United States Supreme Court decisions in Miranda v. Arizona, *37 supra, and Escobeda v. Illinois, supra.[3] The Miranda decision confers upon an accused substantially greater rights than those which are conferred upon a witness before a grand jury. The holding in Miranda relates to interrogation by police at a police station, but Miranda specifically stated that “[w]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.”[4] Miranda v. Arizona, supra at 478 (emphasis added).
Our Supreme Court has consistently held that an individual is entitled to his Miranda warnings at the time an investigation focuses upon him. See Commonwealth v. Jefferson, 423 Pa. 541, 226 A. 2d 765 (1967), and Commonwealth v. Bordner, 432 Pa. 405, 247 A. 2d 612 (1968).
The need for adequate Miranda warnings and for the presence of an attorney during the testimony of an accused is discussed in detail in Meshbesher, “Eight to Counsel before Grand Jury,” 41 F.E.D. 189 (1967) ; “Whatever the bridge Escobedo and Miranda built between police interrogation and the privilege against self-incrimination, no such bridge is needed to apply *38 the privilege to grand jury proceedings. . . . Whatever the requisite length, intensity and ‘coerciveness’ of police interrogation before it can be said that the suspect is being ‘compelled’ to answer, as a practical matter, no comparable significance attaches to the kind of questioning conducted in the grand jury room. No conceptual gap between the grand jury proceedings and the privilege exists to be filled. In the grand jury room it is unnecessary to consider whether misleading, unfair, abusive or coercive questioning under ‘color of law’ have produced defacto conditions equivalent to legal compulsion to answer, for in the grand jury room a person is under legal compulsion to answer; there is a legal obligation to which the privilege in the technical sense can and does apply.” Meshbesher, supra at 198-99 (emphasis in original). See also The Supreme Court, 1963 Term, 1964, 78 Harvard Law Review 143, 222-223.
As we have stated above, the investigation had focused on appellees in the instant case prior to their appearance before the grand jury. Therefore, we would hold that these appellees were not given the proper instructions or warnings prior to their testifying before the grand jury.
Ill
Having determined that appellee’s constitutional rights were violated, we must next approach the question of what is the proper remedy. In Judge Cercone’s well reasoned opinion in Commonwealth v. Cohen, 221 Pa. Superior Ct. 244, 248-49, 289 A. 2d 96 (allocatur denied) (1972), this Court stated that “[i]n Commonwealth v. Kilgallen, 379 Pa. 315, 108 A. 2d 780 (1954), it was held that where a witness appeared before the grand jury, testified under judicial compulsion in violation of his rights pursuant to the Fifth Amendment and *39 Article I, Section 9 of the Pennsylvania Constitution against self-incrimination, his indictment should be quashed. Mr. Justice Chidsey there stated: e. .. we hnow of no case in this jurisdiction that denies the right to challenge the validity of an indictment on the ground of violation of the accused’s constitutional rights here asserted — and so challenge successfully upon proper and sufficient proof.’ (pp. 325-26) (Emphasis supplied.)
“The Kilgallen decision was found to be ‘still valid’ in Commonwealth v. McCloskey, 433 Pa. 117, 277 A. 2d 764 (1971), which held that a witness before this very same April 1969 Investigating Grand Jury was entitled to instructions as to his right against self-incrimination and advice of counsel as follows (p. 120) : ‘. . . we do believe that a witness should receive a warning by the court in charge of the investigating grand jury that if the witness is confused or believes his answer might be incriminating, he may come before the court accompanied by counsel and be advised of his rights. This procedure was not followed with reference to certain of the individual appellees now before us. Accordingly, those indictments in any way based upon a defendant’s own testimony given without this warning and in violation of his right against self-incrimination must be quashed.’ (Emphasis supplied.)”
After a thorough examination of the testimony elicited from Burstein and Shapiro under judicial compulsion by the grand jury, and an examination of the Seventh Presentment concerning their activities, we believe that the presentment of the investigating grand jury was, at least in part, the product of the testimony of these appellees.
The investigating grand jury noted in the Seventh Presentment that “ [m] ost of the developers involved in this fraudulent practice were called to testify before *40 the Investigating Grand Jury. Their explanations varied____We have analyzed each case with care and are recommending indictment against developers where a substantial pattern of fraud exists, without any explanation which credibly indicates that such actions resulted from inadvertence or negligence.” This part of the Presentment and the entire document was read to the indicting grand jury by a detective representing the District Attorney’s office.
The Commonwealth in its brief states that “comparison of the Seventh Presentment with the testimony of individual appellees indicates how ancillary appellees’ testimony before the grand jury was.” After examining the record before me we cannot determine if their testimony was “ancillary” to the Seventh Presentment. The entire testimony given to the grand jury has been consistently withheld by the Commonwealth, and the only testimony available to appellees has been their own.[5] Moreover, this Court cannot on the present record determine whether or not the portions of the presentment which referred to appellees, either in name or by implication, were the indicting grand jury’s main consideration in bringing back an indictment against appellees.
Therefore, because the indictments against individual appellees Burstein and Shapiro were based entirely upon the Seventh Presentment of the investigating grand jury, and because the accusations against them *41 in the Seventh Presentment were based in part upon their own illegally compelled testimony, the indictments against Burstein and Shapiro were properly quashed.
For the above reasons, the order of the lower court is affirmed.

 “Internal evidence within the Seventh Presentment itself establishes that the investigating Grand Jury’s recommendations were based on the following sources: The District Attorney’s Investigation of the Used House Program in 1967 (and subsequent investigations by the District Attorney’s Office in 1968 and 1969) ; records of the Philadelphia Housing Authority and the Department of Licenses and Inspections; reports prepared by the E. L. Conwell Company, an independent engineering firm hired by the Housing Authority to inspect various Used House Program properties; and finally, the testimony of various officials from the Housing Authority and the Department of Licenses and Inspections.” Brief for Appellant, p. 12.

 Manko Appeal, supra, involved the contempt convictions of Gross and Manlto. The companion case of Kilgallen was treated separately in the Supreme Court in Commonwealth v. Kilgallen, 379 Pa. 315, 108 A. 2d 780 (1954).

 Our Supreme Court specifically held in Commonwealth v. Mc-Closlcey, supra at 142, that “[t]he interpretation urged by appellees that counsel be accessible at all times during a witness’s appearance is an unwarranted extension oí the teaching of [Miranda and Escobedo}.” However, as has been pointed out above, McCloslcey concerned a witness and not an accused.

 It is conceded by the Commonwealth that the appellees were not informed of their Miranda rights; that they had a right to remain silent, that anything they said could be used against them in court, that they had a right to an attorney prior to and during the questioning. Appellees’ requests to have counsel present during their examination before the investigating grand jury were denied by the supervising judge.

 In Commonwealth v. McCloshey, supra at 138, the Supreme Court stated that “[a]s to recording the proceedings, a record was made of the special grand jury investigation here involved. Each witness is entitled to his own testimony.” However, this Court can only examine what it has before it, and although the Commonwealth can by right withhold this testimony, this Court and appellees cannot determine if appellees’ testimony was in fact ancillary without a complete record.