Commonwealth, Appellant, *v.* Columbia Investment Corporation.

Argued November 15, 1973; reargued April 18, 1974. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*David Richman,* Assistant District Attorney, with him *Steven H. Goldblatt,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellant.

*George P. Williams, III,* with him *Schnader, Harrison, Segal & Lewis,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, September 5, 1974:

The Commonwealth appeals from an order of the Superior Court that affirmed the trial court's quashing of indictments against appellees Columbia Investment Corporation, and two of its officers Herbert Burstein, and Jack Shapiro. The Superior Court held that appellees were "in the status of accused persons" when called to testify before an investigating grand jury. Therefore, according to the Superior Court, appellees were entitled to be warned that while before the grand jury they had the unqualified right to remain silent; that anything they said would be used against them; that they had the right to have counsel present and to consult with counsel; and that if they were indigent, counsel would be provided without charge. See *Miranda v. Arizona,* 384 U.S. 436, 467-74, 86 S. Ct. 1602, 1624-27 (1966).[1] Because they did not receive these warn-

---

[1] Initially we note that the trial court properly refused to quash the indictment against the corporate appellee, Columbia. A corporation may not claim the Fifth Amendment right against self-incrimi-

ings, the Superior Court affirmed the quashing of the indictments. *Commonwealth v. Columbia Investment Corp.*, 222 Pa. Superior Ct. 30, 292 A.2d 533 (1972).[2] This Court granted the Commonwealth's petition for allowance of appeal.[3]

We conclude that when called before the grand jury, appellees were not "in the status of accused persons." Neither were they in custody. Furthermore, no witness subpoenaed to testify before an investigating grand jury has the right either to refuse to appear or the unqualified right to appear and remain silent. Neither does a witness have the right to have his attorney present during his grand jury appearance. The warning requirement, which appellees urged for the first time on appeal, would be an unprecedented and illogical procedural burden to impose upon an investigating grand jury. Moreover, because appellees do not claim that they were compelled to answer any potentially incriminating questions, we fail to see how they were prejudiced by lack of the warnings they now argue they were entitled to.

# I

The District Attorney of Philadelphia on March 30, 1969, petitioned for the convening of an investigating

---

nation. *Bellis v. United States*, 417 U.S. 85, 94 S. Ct. 2179 (1974); *Commonwealth ex rel. Camelot Detective Agency, Inc. v. Specter*, 451 Pa. 370, 375 n.1, 303 A.2d 203, 206 n.1 (1973); see *Campbell Printing Corp. v. Reid*, 392 U.S. 286, 289, 88 S. Ct. 1978, 1980 (1968); *Curcio v. United States*, 354 U.S. 118, 77 S. Ct. 1145 (1957); *United States v. White*, 322 U.S. 694, 64 S. Ct. 1248 (1944); *Hale v. Henkel*, 201 U.S. 43, 26 S. Ct. 370 (1906).

[2] MONTGOMERY, J., filed a dissenting opinion, in which WRIGHT, P. J., and WATKINS, J., joined. *Commonwealth v. Columbia Inv. Corp.*, 222 Pa. Superior Ct. 30, 41, 292 A.2d 533, 539 (1972).

[3] See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp. 1973).

grand jury to inquire into alleged "widespread corruption" in programs administered by the Philadelphia Housing Authority. Some developers were specifically named in the petition as having fraudulently secured payments for unperformed construction. Appellees were not among those named.

On October 2, 1969, Burstein and Shapiro were questioned by the district attorney about their connection with Philadelphia Housing Authority programs. After this interview appellees were informed that their answers were unsatisfactory, that they were subject to immediate arrest, that a grand jury was investigating public housing programs, and that they would be subpoenaed to appear before that grand jury.

In response to subpoenas the individual appellees, on October 9, 1969, appeared before the supervising judge. Appellees' counsel requested that he be permitted to accompany Burstein and Shapiro into the grand jury room. The motion was denied. Counsel then asked that appellees be allowed to leave the grand jury room during the course of examination if they required advice whether they should answer a particular question or claim the privilege against self-incrimination. Although this motion was also denied, Judge SLOANE then did advise appellees: "Each one of you has a right to have a lawyer, you have a right to consult with him, advise with him, be guided by him. Every aspect of the relationship between lawyer and client must be respected by everybody. And you have a right to confide in your lawyer after you come out of the grand jury room. After you come out of the grand jury room, you have a right to place full confidence in your lawyer—but in no one else. During the time that you are in the grand jury room, you do not have a lawyer with you. You have a right to say, 'I do not understand the quesion'; 'you have a right to say that you will not answer a question because you think it might

hurt you if you do, hurt you criminally if you do. And then the onus is on the Court to determine whether that question should be answered.'" Counsel requested no further instructions and none were given. The question before us is whether more was required.

Burstein and Shapiro then appeared before the investigating grand jury and answered various questions. Appellees do not contend that while testifying they were ordered to answer questions which might have tended to incriminate them. On October 14, 1969, the grand jury submitted to the court its seventh presentment recommending indictment of Burstein, Shapiro, and Columbia for false pretense and conspiracy. The indicting grand jury thereafter returned one hundred and fifty-six indictments against the corporate and individual appellees.

The trial court quashed the indictments on the following four grounds. It held that appellees were deprived of their privilege against self-incrimination when, pursuant to subpoenas, they testified before the investigating grand jury. Second, the trial court concluded that appellees were similarly denied their right to counsel. Third, in its view, prior to indictment appellees were entitled to a preliminary hearing. Finally, according to the trial court the presence of a stenographer in the investigating grand jury room violated our rules of criminal procedure.[4]

In *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764, cert. denied, 404 U.S. 1000, 92 S. Ct. 563 (1971), this Court affirmed the quashing of indictments returned against persons who, prior to testifying be-

---

[4] It should be noted that the trial court's order quashing the indictments was issued on October 21, 1970. Judge SMITH thus did not have the benefit of this Court's decision in *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764, cert. denied, 404 U.S. 1000, 92 S. Ct. 563 (1971).

fore this same investigating grand jury, had not been afforded the instruction which Judge SLOANE gave these appellees. We held that prior to testifying, a witness must be instructed that he may consult with a lawyer before and after testifying, but not while he is giving testimony. He must also be advised that should any doubt arise whether he may invoke the privilege against self-incrimination in response to a particular question, he and his counsel may come before the court and obtain a ruling on the propriety of refusing to answer. Id. at 143, 277 A.2d at 777. This Court there expressly held that neither the Fifth Amendment nor the Sixth Amendment nor Article I, Section 9 of the Pennsylvania Constitution require that counsel be available at all times to a witness before an investigating grand jury. Id. at 141-42, 277 A.2d at 776-77.

The Superior Court majority attempted to distinguish *McCloskey* on the ground that "[t]he instant case . . . involves individuals who were not mere witnesses before the grand jury. These individuals were in the status of accused persons about to be recommended for indictment at the time they were compelled to testify." 222 Pa. Superior Ct. at 35, 292 A.2d at 536.

Although appellees allege no prejudice, the Superior Court majority held that the failure of the supervising judge to administer complete *Miranda* warnings required quashing of the indictments. Id. at 38, 292 A.2d at 537.

We consider four questions: First, were appellees, when called to testify before the investigating grand jury, "in custody"? Second, does any person—witness, potential defendant, or "virtual defendant"—have the right to refuse to appear or to appear and remain silent when subpoenaed by an investigating grand jury? Third, were appellees, as the Superior Court majority concluded, "in the status of accused persons"? And finally do any of the other reasons advanced by the trial court justify quashing the indictments?

## II

The implications of the Superior Court's holding should be fully understood. If *Miranda* warnings are constitutionally required when one in the situation of the individual appellees is called before an investigating grand jury, then he must be afforded the presence of an attorney while testifying or be allowed to remain silent when before the grand jury. The Superior Court's interpretation is completely at odds with the rationale of *Miranda v. Arizona,* supra, and of *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964), and with the historical function of the grand jury.[5]

This Court in *McCloskey* categorically rejected the contention that *Miranda* and *Escobedo* are applicable to grand jury situations.

"Neither *Escobedo* nor *Miranda* were even remotely concerned with right to counsel before an investigating grand jury. The interpretation urged by appellees that counsel be accessible at all times during a witness's appearance is an unwarranted extention of the teaching of these decisions." *Commonwealth v. McCloskey,* supra, at 142, 277 A.2d at 777. *Miranda* and *Escobedo* are aimed at the coercion inherent in "statements obtained from a defendant questioned while in custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* supra, at 445, 86 S. Ct. at 1612.

The United States Supreme Court, through the use of empirical data concerning police tactics designed to break the will of an in-custody accused, clearly indicated that its concern was with custodial interrogation

---

[5] See *United States v. Calandra,* 414 U.S. 338, 342-47, 94 S. Ct. 613, 617-19 (1974). For a discussion of the history and role of the grand jury, see id. at 342 n.3, 94 S. Ct. at 617 n.3, and *Commonwealth v. McCloskey,* 443 Pa. 117, 131-34, 277 A.2d 764, 771-72, cert. denied, 404 U.S. 1000, 92 S. Ct. 563 (1971).

and the oppressive tactics and subterfuges employed by police officers seeking to obtain incriminating statements. See id. at 445-59, 86 S. Ct. at 1612-19.[6] This Court has consistently applied *Miranda* only to such in-custody interrogation situations. E.g., *Commonwealth v. D'Nicuola*, 448 Pa. 54, 292 A.2d 333 (1972); *Commonwealth v. Simala*, 434 Pa. 219, 252 A.2d 575 (1969); *Commonwealth v. Bordner*, 432 Pa. 405, 247 A.2d 612 (1968); *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A.2d 765 (1967).

Although our Court has never been reluctant to apply *Miranda* to custodial interrogation situations, we have never held that testimony before a grand jury, investigating or indicting, is the equivalent of in-custody police interrogation. When confronted with the question of what warnings are necessary before testimony is taken by an investigating grand jury, we formulated a warning specifically designed for the unique situation an investigating grand jury presents. *Commonwealth v. McCloskey*, supra.

Our reasoning in refusing to extend *Miranda* to a grand jury witness is entirely consistent with that of the United States Supreme Court. That Court only one year ago observed that "[t]he compulsion exerted by a grand jury subpoena differs from the seizure effected by an arrest or even an investigative 'stop' in more than civic obligation." *United States v. Dionisio*, 410 U.S. 1, 10, 93 S. Ct. 764, 769 (1973).

The Court quoted Chief Judge FRIENDLY writing for the Court of Appeals for the Second Circuit: "The latter [an arrest or investigative stop] is abrupt, is effected with force or the threat of it and often in demean-

---

[6] The in-custody test is essentially identical to the focus-on test applied in *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758 (1964). See *Miranda v. Arizona*, 384 U.S. 436, 444 & n.4, 86 S. Ct. 1602, 1612 & n.4 (1966).

ing circumstances, and, in the case of arrest, results in a record involving social stigma. A subpoena is served in the same manner as other legal process; it involves no stigma whatever; if the time for appearance is inconvenient, this can generally be altered; and it remains at all times under the control and supervision of a court."[7] Manifestly, one subpoenaed to testify before a lawfully-constituted grand jury such as this, see *Commonwealth ex rel. Camelot Detective Agency, Inc. v. Specter*, 451 Pa. 370, 303 A.2d 203 (1973), is not subjected to in-custody interrogation. Hence *Miranda* warnings are not required.

## III

Another compelling basis for holding that *Miranda* warnings are not mandated is that one giving testimony before a grand jury, whether witness, potential defendant, or "virtual defendant," is not privileged to refuse to testify.[8] He may, of course, assert his privilege

---

[7] *United States v. Dionisio*, 410 U.S. 1, 10, 93 S. Ct. 764, 770 (1973) (quoting *United States v. Doe (Schwartz)*, 457 F. 2d 895, 898 (2d Cir. 1972), cert. denied, 410 U.S. 941, 93 S. Ct. 1376 (1973)). See *United States v. Mara*, 410 U.S. 19, 93 S C.t. 774 (1973).

[8] Appellees' reliance on *Sheridan v. Garrison*, 273 F. Supp. 673 (E.D. La. 1967), rev'd on other grounds, 415 F.2d 699 (5th Cir. 1969), cert. denied, 396 U.S. 1040, 90 S. Ct. 685 (1970), is misplaced. There the district court enjoined enforcement of a subpoena issued to Sheridan by a state grand jury. The court makes clear, however, that "Sheridan is not only the focus of suspicion: he is formally charged with the crime of public bribery." 273 F. Supp. at 678. Instantly Burstein and Shapiro concede that when subpoenaed they were not "formally charged." We need neither approve or disapprove the holding in *Sheridan*. It is sufficient merely to note that Burstein and Shapiro, unlike Sheridan, were not formally charged.

We are next urged to interpret *Commonwealth v. Kilgallen*, 379 Pa. 315, 108 A.2d 780 (1954), and *Manko Appeal*, 168 Pa. Superior Ct. 177, 77 A.2d 700 (1951), as holding that an accused may either refuse to appear or appear and remain silent when subpoenaed by

against self-incrimination in response to a particular question. Here the supervising judge gave a warning accurately reflecting the rights that could be asserted by witnesses before the investigating grand jury. Judge Sloane clearly advised appellees and their counsel that they were privileged to refuse to give any potentially incriminating answers and that if unsure of the privilege's applicability to a particular question, they and their counsel were entitled to a preliminary ruling on the incriminating nature of the question.[9]

---

an investigating grand jury. We need not decide this question because whatever the holdings of *Kilgallen* and *Manko*, they are not applicable to the instant appellees. Kilgallen, Manko, and co-defendant Gross were specifically named in the petition for the calling of the investigating grand jury. They were, therefore, effectively charged when subpoenaed. The entire grand jury investigation was directed toward gathering evidence against them. Here, appellees were not named in the petition. They were merely three witnesss, and perhaps potential defendants, among hundreds. Their situation is easily distinguishable from that in *Kilgallen* and *Manko*. In *Kilgallen* this Court specifically held, "where one is charged with a specific crime or crimes in a petition for the calling of an investigatory grand jury, he cannot be compelled to testify before such grand jury if he claims his constitutional privilege . . . ." *Commonwealth v. Kilgallen*, supra, at 321, 108 A.2d at 783 (quoting *Manko Appeal*, supra, at 179, 77 A.2d at 701).

9 Appellees' argument centers on a single point. It is not contended that while testifying Burstein and Shapiro were compelled to answer questions which might have tended to incriminate them. Rather, appellees assert that "It was the *appearance* of Burstein and Shapiro before the grand jury, and the grand jury's disbelief of the assertions of innocence, which caused the grand jury to conclude that Burstein and Shapiro had committed deliberate fraud." (Emphasis added).

This theory, however, is purely conjectural and not persuasive. Earlier, appellees claimed that the indictments must be quashed because prior to calling them to testify before the grand jury the Commonwealth had evidence sufficient to indict. Now we are urged that it was the appearance of Burstein and Shapiro which caused the investigating grand jury to present them for indictment. Certainly if the district attorney had evidence sufficient to indict be-

*United States v. Luxenberg,* 374 F.2d 241 (6th Cir. 1967), and *Stanley v. United States,* 245 F. 2d 427 (6th Cir. 1957), relied upon by appellees and the trial court, require no more. In *Luxenberg,* the court did not address the question whether *Miranda* warnings were necessary when a "virtual defendant" is called before a grand jury because appellants had stipulated that they were not, when called, "virtual defendants." Similarly, in *Stanley,* the putative "virtual defendant" neither showed nor claimed that he was charged with any crime at the time he testified before the grand jury; Stanley's testimony like appellees' was not incriminating. The court refused to dismiss the indictment. *Stanley v. United States,* supra, at 434-35. Although in each case, the Sixth Circuit stated that one called before a grand jury must be advised of his privilege against self-incrimination, there is no statement or intimation that the right to remain silent should apply before a grand jury.[10]

---

fore subpoenaing appellees, and they gave no incriminating testimony before the grand jury, appellees' argument is nothing more than an attempt to bootstrap a non-incriminating appearance before the grand jury to the level of incriminating evidence.

There is simply no evidence to support appellees' theory that their mere appearance led to presentment. We find no basis for their intuitive notion that the grand jury based its action on disbelief of their assertions of innocence. We can only conclude that this theory is nothing more than completely unsupported speculation. On this record it must be concluded that the grand jury based the presentment on evidence adduced during its extensive examination of numerous other witnesses familiar with the operation of the Philadelphia Housing Authority.

[10] More recently, the United States District Court for the Western District of Texas examined the applicability of *Miranda* to grand jury situations and held that full *Miranda* warnings were not required. *United States v. Rangel,* 365 F. Supp. 155, 161-62 (W.D. Tex. 1973).

The instructions given to Burstein and Shapiro by the supervising judge were at least as broad, and in all probability broader,

Other federal courts which have considered applicability of *Miranda* to grand jury testimony have refused to extend the warning requirement. See *United States v. Corallo,* 413 F.2d 1306 (2d Cir.), cert. denied, 396 U.S. 958, 90 S. Ct. 431 (1969); *United States v. Levinson,* 405 F.2d 971 (6th Cir. 1968), cert. denied, 395 U.S. 958, 89 S. Ct. 2097 (1969); see also *In re Groban,* 352 U.S. 330, 77 S. Ct. 510 (1957); *In re Grumbles,* 453 F.2d 119 (3d Cir. 1971), cert. denied, 406 U.S. 932, 92 S. Ct. 1806 (1972).

Indeed, Chief Judge FRIENDLY recently stated that "even the fact that the witness may himself be the subject of the grand jury investigation does not entitle him to refuse to *appear.*" *United States v. Doe (Schwartz),* 457 F.2d 895, 898 (2d Cir. 1972), cert. denied, 410 U.S. 941, 93 S. Ct. 1376 (1973). Likewise, Mr. Justice STEWART, speaking for the Court in *United States v. Dionisio,* 410 U.S. 1, 10 n.8, 93 S. Ct. 764, 769 n.8 (1973) commented, "The obligation to appear is no different for a person who may himself be the subject of the grand jury inquiry." Accord, *United States v. Winter,* 348 F.2d 204, 207-08 (2d Cir.), cert. denied, 382 U.S. 955, 86 S. Ct. 429 (1965); *United States v.*

---

than those required in *Rangel.* In spite of repeated references to *Miranda,* the *Rangel* court never addressed or even alluded to any right of grand jury witness, "virtual defendant" or not, to remain silent. See also *United States v. Fruchtman,* 282 F. Supp. 534 (N.D. Ohio 1968).

In *Mattox v. Carson,* 295 F. Supp. 1054 (M.D. Fla. 1969), aff'd on other grounds, 424 F.2d 202 (5th Cir. 1970), the district court granted a petition for habeas corpus. The court found that prior to testifying before a grand jury, petitioners, who were virtual defendants, had signed waiver of immunity forms without being advised of their Fifth and Sixth Amendment rights. This failure to warn, it was held, prevented petitioners from knowingly and intelligently waiving their rights. The court's holding does not address the right to have counsel in the grand jury room nor the right of any witness to remain silent before a grand jury. See id. at 1059.

*Scully,* 225 F.2d 113 (2d Cir.), cert. denied, 350 U.S. 897, 76 S. Ct. 156 (1955) ; *United States v. Boyle,* 338 F. Supp. 1028, 1036 (D.D.C. 1972).

It must be concluded that a grand jury witness, virtual defendant or otherwise, does not have the right to refuse to appear before a grand jury and, once there, does not have an unqualified right to remain silent. Requiring *Miranda* warnings to be administered to grand jury witnesses would not only be an unprecedented and unwarranted extention of *Miranda,* it would be illogical and confusing because it would erroneously imply the existence of two nonexistent rights—the unqualified right to remain silent and the right to have counsel present in the grand jury room. The instructions required by *Commonwealth v. McCloskey,* here administered to appellees in the presence of counsel prior to appellees testifying, completely appraise any grand jury witness, "virtual defendant" or otherwise, of the Fifth and Sixth Amendment rights available to him.

## IV

We do not however rest our decision exclusively upon our determination that one subpoenaed to testify before an investigating grand jury is not in custody or on our determination that one called before a grand jury may not refuse to appear or remain silent. A complete examination of the facts surrounding the testimony of Burstein and Shapiro convinces us that they were not, as the Superior Court erroneously concluded, "in the status of accused persons."[11]

Here appellees were in the same position as any other witness called before the investigating grand

---

[11] That appellees were not in the same status as a criminal accused is implicit in our holding that they were not "in custody." See n.6 supra & accompanying text; *Miranda v. Arizona,* 384 U.S. 436, 444 & n.4, 86 S. Ct. 1602 & n.4 (1966).

jury. That Burstein and Shapiro may have been potential defendants cannot be denied. However, as of the time appellees were subpoenaed and appeared before the grand jury they were not, as the Superior Court mistakenly held, "in the status of accused persons upon whom a police investigation has focused."

The district attorney's questioning of appellees, prior to issuing subpoenas as a part of the investigation of Philadelphia Housing Authority programs, did not mark them as criminal defendants. The prosecutor's dissatisfaction with appellees' answers does not establish that evidence sufficient to indict existed.[12] Appellees would have us hold that when a potential defendant decides that the prosecuting authorities have evidence sufficient to obtain an indictment he may then either refuse to appear or remain silent before an investigating grand jury. We expressly decline to permit the witness to decide ex parte whether to appear or to refuse to appear. The privilege against self-incrimination guaranteed by the Fifth Amendment and Article I, Section 9 of the Pennsylvania Constitution, as implemented through this Court's *McCloskey* decision, provides ample protection to one giving testimony before an investigating grand jury.[13]

---

[12] See *Commonwealth v. Columbia Inv. Corp.*, 222 Pa. Superior Ct. 30, 42-43, 292 A.2d 533, 539-40 (1972) (MONTGOMERY, J., dissenting, joined by WRIGHT, P. J., and WATKINS, J.).

[13] The Superior Court erroneously relied on *Commonwealth v. Kilgallen*, 379 Pa. 315, 108 A.2d 780 (1954), and *Manko Appeal*, 168 Pa. Superior Ct. 177, 77 A.2d 700 (1951), to show that appellees were "accused." Manko, Kilgallen, and co-defendant Gross were accused "*by name*, of particular offenses and of a general conspiracy" in the district attorney's petition for an investigating grand jury. *Manko Appeal*, supra, at 179, 77 A.2d at 701. Appellees cannot claim, as did Manko, Kilgallen and Gross, that the entire grand jury investigation is directed against them. Those decisions do not support appellees' claim that they were "in the status of accused persons."

## V

The Superior Court majority in affirming the quashing of the indictments discussed only the necessity for *Miranda* warnings. Before the indictments may be reinstated, we must examine the trial court's alternate grounds for quashing.

First, the trial court concluded that the Commonwealth's failure to have appellees arrested and given a preliminary hearing violated our rules of criminal procedure. Therefore, the indictments had to be quashed. We examined this precise claim in *McCloskey*, and determined that our rules do not abolish the traditional procedure by which an investigating grand jury makes a presentment. The absence of a preliminary hearing was thus held not to justify quashing the indictments; this conclusion is equally applicable to the instant case. See *Commonwealth v. McCloskey*, supra, at 127-29, 277 A.2d at 769-70.[14]

Second, appellees have failed to demonstrate how they were prejudiced by the presence of a court-appointed and sworn stenographer in the investigating grand jury room. Furthermore, neither appellees nor their counsel interposed objection to the presence of the stenographer and no prejudice has been alleged. The trial judge thus erred in quashing the indictments on this basis.

Additionally, the Pennsylvania rule of criminal procedure proscribing the recording of testimony in grand jury proceedings[15] is directed solely to indicting grand

---

[14] Pa. R. Crim. P. 102 & 116(b)(2). These rules have been revised since the date of the trial court's opinion. However, the present appeal is governed by the former rules. See *Commonwealth v. McCloskey*, 443 Pa. 117, 127-28 nn.15-16, 277 A.2d 764, 769 nn.15-16, cert. denied, 404 U.S. 1000, 92 S. Ct. 563 (1971).

[15] See Pa. R. Crim. P. 208-09.

juries.[16] The entire thrust of our rules is toward regulating prosecutorial discretion and possible abuses of the indicting grand jury. See, e.g., Pa. R. Crim. P. 200, 203, 210, 211, 213-21, 224.

Procedural regulation of investigating grand juries, on the other hand, is accomplished through the close supervision of a presiding judge and superintendance by our appellate courts. See, e.g., *Commonwealth ex rel. Camelot Detective Agency, Inc. v. Specter*, 451 Pa. 370, 303 A.2d 203 (1973); *Commonwealth v. McCloskey*, supra; *Commonwealth v. Kilgallen*, 379 Pa. 315, 108 A.2d 780 (1954); *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936); *Manko Appeal*, 168 Pa. Superior Ct. 177, 77 A.2d 700 (1951). In *McCloskey*, this Court concluded that recording of proceedings before an investigating grand jury is a positive advantage to one subsequently indicted. At trial, the accused, if he desires, will have the benefit of relevant portions of the recorded testimony for purposes of impeachment. Id. at 138, 277 A.2d at 772-73. This advantage may be particularly valuable when, as here and in *McCloskey*, no preliminary hearing is held. Other than this use of the notes of testimony and the very real need of the investigating grand jurors for a record in deciding whether to issue a presentment, the transcript is under court supervision and is kept strictly secret.[17]

---

[16] See Pa. R. Crim. P. 200-24.

[17] Four reasons for grand jury secrecy are usually advanced.

"1. The grand jurors should be free from the apprehension that their opinions and votes may subsequently be disclosed by compulsion;

"2. The complainants and witnesses summoned should be free from the apprehension that their testimony may be subsequently disclosed by compulsion so that the state may secure willing witnesses;

"3. The guilty accused should not be provided with information that might enable him to flee from arrest, suborn false testimony, or tamper with witnesses or grand jurors;

The final ground for quashing advanced by the trial court was the alleged denial of the right to counsel. Appellees argued, and the trial court held, that the Sixth Amendment requires that grand jury witnesses be permitted to leave the grand jury room to consult with waiting counsel. The court accepted the procedure adopted by the New York courts. See *People v. Ianniello,* 21 N.Y.2d 418, 235 N.E.2d 439, 288 N.Y.S.2d 462, cert. denied, 393 U.S. 827, 89 S. Ct. 90 (1968). See also *United States v. Capaldo,* 402 F.2d 821 (2d Cir. 1968), cert. denied, 394 U.S. 989, 89 S. Ct. 1476 (1969).[18]

In *McCloskey* this Court faced the issue whether one testifying before a grand jury must be afforded the right to consult with counsel at the door to the grand jury room. We examined the New York system and reasoned that "[t]he essential element of judicial supervision would not be available were a witness permitted at will to consult with his attorney for an indefinite period of time after every question, no matter how unmeritorious his objection."

We there concluded that in Pennsylvania if one testifying before a grand jury is uncertain of the propriety of refusing to answer a particular question, he may not, as in New York, consult with counsel at the grand jury room door. He may, however, leave the grand jury room and with his counsel appear before the supervis-

---

"4. The innocent accused, who is charged by complaint before the grand jury but exonerated by its refusal to indict, should be protected from the compulsory disclosure of the fact that he has been groundlessly accused." Calkins, Grand Jury Secrecy, 63 Mich. L. Rev. 455, 458-59 (1965). None of these policies are in any way denegrated by the use, under court supervision, of recorded testimony by the grand jurors in their deliberations and the release of advantageous excerpts to an accused when fairness demands.

[18] The trial court properly refused to hold that one testifying before an investigating grand jury is entitled to counsel inside the grand jury room.

ing judge. While affording the witness the important right to consult with his attorney, this system prevents abuse of that right by maintaining judicial cognizance of the witnesses' conduct.[19] Our system maintains close liaison between supervising judge, grand jury witnesses, and counsel.

The *McCloskey* regimen consequently provides the grand jury witness with greater protection than does the New York system. In Pennsylvania, not only may the doubtful witness consult with counsel, but he is entitled to a preliminary ruling by the supervising judge on the merits of a claim of privilege. Both the rights of the witness and the need for adequate judicial supervision of the investigating grand jury are protected. See *Commonwealth v. McCloskey,* supra, at 140-45, 277 A.2d at 776-78.

As noted earlier, appellees have never claimed that they in fact answered any potentially incriminating questions. Since appellees do not claim that they have answered incriminating questions, whether they were or were not adequately warned of their right to counsel becomes irrelevant. Moreover, appellees cannot possibly, in the present factual situation and in view of the supervising judge's instructions, point to any prejudice caused by the alleged lack of warnings.

## VI

"For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right

---

[19] As Judge BREITEL observed in *People v. Ianniello*, 21 N.Y.2d 418, 425, 235 N.E.2d 439, 443-44, 288 N.Y.S.2d 462, 469, cert. denied, 393 U.S. 827, 89 S. Ct. 90 (1968) :

"Where a witness persists in raising objections which are palpably not in good faith, the judge may compel him to desist from this course under the sanction of contempt proceedings."

to every man's evidence." 8 J. Wigmore, Evidence § 2192, at 70 (McNaghten rev. 1961). This maxim is particularly applicable to an investigating grand jury.

"It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury labors, not at the beginning." *Blair v. United States,* 250 U.S. 273, 282, 39 S. Ct. 468, 471 (1919). See *United States v. Calandra,* 414 U.S. 338, 343, 94 S. Ct. 613, 617 (1974); *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S. Ct. 2646, 2660 (1972).

Review of the record satisfies us that appellees were in no sense prejudiced by their appearance before the investigating grand jury. The supervising judge, immediately prior to their entering the grand jury room, fully informed them in the presence of their counsel of their constitutional rights before the grand jury. No objection to these instructions was interposed. Although appellees testified, they do not allege that they were compelled to or did answer any incriminating questions. The record fails to indicate any basis for quashing the indictments.

The order of the Superior Court is reversed and the indictments reinstated.

———

DISSENTING OPINION BY MR. JUSTICE EAGEN:

I still adhere to the views expressed in my concurring and dissenting opinion in *Commonwealth v. McCloskey,* 443 Pa. 117, 277 A.2d 764 (1971). As I stated therein: "[A] witness before a grand jury need not answer any incriminating questions. Resolution of the

scope of the privilege against self incrimination and the applicability of the waiver doctrine on a question-by-question basis frequently presents a difficult problem. I cannot see how an untrained layman can be expected to possibly discern whether or not an answer to a particular question will subject him to the danger of incrimination. To deny him the opportunity of adequate consultation with his counsel is to render his right under the Fifth Amendment meaningless." *Id.* at 149, 277 A.2d at 780.

Moreover, I strongly disagree with the majority that Burstein and Shapiro were not "in the status of accused persons" when they were called for interrogation before the grand jury. As the majority opinion notes, they were both questioned beforehand by the district attorney who told them their answers were unsatisfactory and *"they were subject to immediate arrest."* To now conclude they were not "accused persons" at this point defies reason and logic.

In my view, Burstein's and Shapiro's rights under the Fifth and Sixth Amendments were not adequately protected.

Mr. Justice MANDERINO joins in this dissenting opinion.

DISSENTING OPINION BY MR. JUSTICE NIX:

I dissent.

A review of this record convinces me that appellees were denied the rights guaranteed them by the Fifth and Sixth Amendments to the United States Constitution as well as Art. I, Sec. 9 of the Pennsylvania Constitution. I would therefore affirm the quashing of indictments obtained at least partially as a result of the deprivation of such rights.

Appellees were questioned by the District Attorney of Philadelphia pursuant to an investigation into "widespread corruption" in programs administered by the

Philadelphia Housing Authority. After this interview, the appellees were informed that their answers were unsatisfactory, that they were subject to immediate arrest and that they would be subpoenaed to appear before a grand jury investigating public housing programs.

One week later, appellees appeared before the supervising judge of the grand jury pursuant to a subpoena. Counsel requested that he be permitted to accompany the appellees during questioning before the grand jury or, in the alternative, that they be permitted to leave the grand jury room during the course of questioning to confer with counsel and obtain assistance in understanding a question or in deciding whether to claim the privilege against self-incrimination. Those requests were denied.

Appellees were then questioned in front of the grand jury and subsequently indicted. In its presentment, the grand jury found:

"We have found that approved developers, asking extra money for the construction of new walls, certifying that the old walls were unsafe, have left the old walls untouched or coated their defects with stucco and billed the authority for new walls.

"4. *Columbia Investment Corporation*—The principals of this firm are Herbert Burstein and Jack Shapiro. There were a total of twenty-six (26) properties wherein they requested additional money for new wall construction work. A total of eighty-six (86) walls were assigned as in need of new construction out of which fifty-eight (58) were found not to have been done. Yet this developer received for this supposed work thirty-seven thousand dollars ($37,000).

". . .

"Most of the developers involved in this fraudulent practice were called to testify before the Investigating Grand Jury. Their explanations varied. Some of the developers suggested that there was a breakdown in

communication within their own work forces. Others suggested that their workload was too heavy and thus they were unable to keep up with the work called for as to each house. Others offered no reasonable explanation. In at least three instances, the developers involved stated that they hired a general contractor who did all the construction work and they merely received a fixed percentage of the sale price depending upon whether it was a single family unit, multi or triplex to be rehabilitated. These developers suggested, therefore, that the responsibility for this faulty work rests with the general contractor and not with them.

" . . .

*"We have analyzed each case with care and are recommending indictments against developers where a substantial pattern of fraud exists, without any explanation which credibly indicates that such actions resulted from inadvertence or negligence.*

" . . .

"We ask the Court to direct the District Attorney to prepare and present to an appropriate indicting Grand Jury, bills of indictment charging the following firms and individuals with the offenses reflected in this Presentment.

" . . .

"3. That Columbia Investment Corporation and its principals, Herbert Burstein and Jack Shapiro, during the years 1968 and 1969, conspired among themselves and together with others to unlawfully obtain money by false pretenses and to cheat and defraud the Philadelphia Housing Authority in fifty-eight (58) instances as previously observed in this Presentment and pursuant to that conspiracy, presented false statements and claims for the payment of money for new wall construction which was in fact not done and thereby obtained such money unlawfully from the Philadelphia Housing Authority."

The majority reverses the quashing of the indictments and explicitly holds that "no witness subpoenaed to testify before an investigating grand jury has the right either to refuse to appear or the unqualified right to appear and remain silent. Neither does a witness have the right to have his attorney present during his grand jury appearance." In rejecting appellees' attack on their indictment, the majority implicitly holds that a witness before an investigating grand jury need not be given the right to leave the grand jury room during the course of questioning to obtain counsel's advice in deciding to invoke the privilege against self-incrimination. I believe the majority's position is violative of the protection intended to be afforded under the Fifth Amendment and the Sixth Amendment right to counsel. This ruling also offends the protection against self-incrimination and the right to counsel provided by the Constitution of this Commonwealth.

It is certainly beyond cavil that a witness appearing before a grand jury may refuse to answer any given question on the ground that it may tend to incriminate him. *Curcio v. United States,* 354 U.S. 118 (1957); *Hoffman v. United States,* 341 U.S. 479 (1951); *Counselman v. Hitchcock,* 142 U.S. 547 (1892). I do not understand the majority or the Commonwealth to argue otherwise. Nor has anyone suggested that one appearing before a grand jury may not retain counsel to represent him. In his instructions to the appellees immediately before their appearance, Judge SLOAN assured them: "Each one of you has a right to have a lawyer, you have a right to consult with him, advise with him, be guided by him." In my view, however, after recognizing the right of counsel, the court proceeded to proscribe such limitations on the right to confer with that counsel, that the protection was rendered illusory. The majority's insistence that witnesses, who are the focus of the grand jury's inquiry, make the decision to invoke

the privilege against self-incrimination unaided by counsel dilutes the privilege and frustrates the right to counsel.

The privilege against self-incrimination is as important as any of the protections afforded in the Bill of Rights. *Gouled v. United States,* 255 U.S. 298 (1921). It originated as a protest against the continental inquisitorial and unjust methods of interrogating accused persons and in the setting up of additional barriers in England to protect the people against the exercise of arbitrary power. *Brown v. Walker,* 161 U.S. 591, 596 (1896).

"[The Fifth Amendment privilege against self-incrimination] was aimed at . . . a recurrence of the Inquisition and the Star Chamber. . . . Prevention of the greater evil was deemed of more importance than occurrence of the lesser evil [that the privilege may, on occasion, save a guilty man from his just desserts.]" *Ullman v. United States,* 350 U.S. 422, 428 (1956). The privilege operates to protect the innocent as well as the guilty. *Grunewald v. United States,* 353 U.S. 391 (1957); *Slochower v. Bd. of Higher Education of New York City,* 350 U.S. 551 (1956).

Courts have construed the privilege consistent with the breadth of the mischief against which it seeks to guard. *Miranda v. Arizona,* 384 U.S. 436 (1966). To sustain the privilege, it need only be evidenced from the implications of the question, in the setting in which it was asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because an injurious disclosure would result. *Curcio v. United States, supra; Emspak v. United States,* 349 U.S. 190 (1955).

Despite the importance and breadth of the privilege, courts have consistently held that the voluntary offer of testimony upon a fact is a waiver as to all other relevant facts, because of the necessary connection between

all. *Spencer v. Texas,* 385 U.S. 554, 561 (1967); *Michelson v. United States,* 335 U.S. 469 (1948); *Johnson v. United States,* 318 U.S. 189 (1943).

Because the layman is not generally aware of either the breadth of the Fifth Amendment's coverage, or the ease of its waiver, one who is the object of a grand jury's investigation must be afforded a meaningful opportunity to consult with his counsel when deciding whether to invoke the privilege. Meaningful assistance from counsel requires that counsel be in the grand jury room, beside his client, in order to hear the implications arising from the flow of questions. Only through such a procedure can an attorney determine that point at which questioning threatens to impinge upon a sensitive area.

The layman is not skilled at perceiving the implications that a given answer may have. He is likely to misjudge the breadth of the Fifth Amendment's protection, and then discover, too late, that he has waived his privilege. In addition the layman's decision whether to remain silent is colored by the natural tendency to respond to an accuser's allegations. To require the lay witness to proceed to exercise the privilege is in fact to strip him of the protection that privilege sought to provide.

The majority has offered no persuasive reasons for the curtailment of the important rights at issue. Clearly secrecy of the grand jury would not justify such a result. Counsel has a right to argue the validity of his client's claim of privilege. Obviously, he must have the benefit of questions and answers up to that point in order to make a meaningful argument on that issue. The majority apparently approves of the holding in *Commonwealth v. McCloskey,* 443 Pa. 117, 138, 277 A.2d 764, 774-75, *cert. denied,* 404 U.S. 1000 (1971) to the effect that: "Each witness is entitled to his own testimony. Furthermore, should any of the other evidence

before the investigating grand jury be material to the impeachment of Commonwealth witnesses at trial, we will not presuppose that the trial court would not adequately protect any rights a defendant might have to utilize such evidence." (Footnote omitted). I must assume that under the above rule both the witness and his counsel are entitled to a transcript of at least the witness's own testimony before the grand jury. In light of that rule, it would be totally unjustified to withhold counsel from the grand jury room on a pretext of secrecy. Clearly, the presence of counsel in the jury room during the questioning of his client in no way encroaches upon the veil of secrecy presently recognized as surrounding the jury's activities.

Nor, can it be argued that the presence of an attorney representing the witness would disrupt the proceedings unnecessarily. Such a procedure is used at trials with satisfactory results. The presence of an attorney can only enable the witness to appreciate fully his rights. Society has no legitimate interest in keeping witnesses ignorant of their rights. Having concluded that witnesses before a grand jury have a privilege against self-incrimination and have a right to a warning to that effect, I cannot understand the majority's reluctance to allow counsel to be present to insure the proper invocation of the privilege.

Finally, I cannot accept the majority's bald assertion because appellees have failed to assign "any potentially incriminating questions" they were compelled to answer, they were not prejudiced. This assertion fails to perceive the distinction between a complaint of being compelled to answer a specific incriminating question and the wrong asserted here that they were deprived of counsel when called upon to make a determination as to the invocation of the privilege. Throughout the proceedings questions were being propounded and throughout the proceedings they alone, without the advice of

counsel, were called upon to decide when and if to elect to seek the protection afforded by this constitutional right. This is the prejudice asserted and it is clearly demonstrated by their being forced to testify out of the presence of their counsel and without immediate access to him.

Equally untenable is any suggestion that the denial of the right of counsel and the deprivation of the Fifth Amendment privileges were in this instance harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18 (1967). As a result of the presentment offered by this grand jury the indicting grand jury returned one hundred and fifty-six (156) indictments against the corporate and individual appellees. This grand jury stated their reason for recommending indictments as being those instances where there was an absence of "any explanation which credibly indicates that such actions resulted from inadvertence or negligence." To conclude in this context that the appellees' responses to the questions propounded were exculpatory and thus not incriminating would be completely unrealistic. Indictments must be quashed where they are based in any way upon a defendant's testimony given in violation of his right against self-incrimination. *Commonwealth v. Cohen,* 221 Pa. Superior Ct. 244, 289 A.2d 96 (1972).

I would affirm the orders of the Superior Court and the court below quashing these indictments.